**Rene RICHARD, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPA-
NY, and Alaska Lumber and Pulp
Company, Appellees.**

No. 267.

Supreme Court of Alaska.

Aug. 19, 1963.

Douglas L. Gregg, Juneau, for appellant.

Robert Boochever, Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The appellant lost the sight in one of his eyes because, as he alleges in his amended complaint, the appellees, who are his employer and the employer's insurance carrier, negligently, maliciously and in wanton disregard of his health delayed in providing him with necessary medical care. The prayer is for both compensatory and punitive damages. The appellees moved to dismiss the suit for failure of the appellant to state a claim upon which relief might be granted. It was their contention that the appellant's exclusive remedy lay in a proceeding before the Alaska Workmen's Compensation Board (hereinafter referred to as the Board) as provided under the provisions of the Alaska Workmen's Compensation Act [1] and not in an action at law for damages. The trial court granted the motion to dismiss the action and entered judg-

1. S.L.A.1959, ch. 193 [AS 23.30.005–23.30.270].

ment accordingly. The appellant asks us to reverse the judgment.

The facts pertinent to the appeal are these: On February 5, 1960, the appellant suffered an injury to his left eye. His employer sent him to Seattle and there provided medical care for him, including an operation on the eye, by Drs. Hicks and Stellwagen. After a period of convalescence and after being told that he could expect about fifty per cent recovery of vision in three months' time, the appellant was returned to Alaska. In compliance with doctor's instructions, the appellant, on June 9, 1960, underwent an examination of the injured eye by Dr. Leer, an Alaskan eye specialist, selected by the appellee insurance carrier. This examination disclosed that the appellant had suffered a detachment of the retina and prompted Dr. Leer to recommend to the appellant's hometown physician, Dr. Shuler, by letter dated June 17, 1960, that "surgery should be done as soon as is feasible because the longer the detachment persists, the less the chances of success." He also recommended a San Francisco doctor to perform the operation. A copy of the letter was sent to the Board and the insurance carrier. At the time of making his examination the eye specialist also informed the appellant of the need of further surgery and that the insurance carrier would be so advised.

Earlier, on March 21, 1960, the appellant had signed a compromise and release for the full loss of the eye for the sum of $4,700. The execution of this document was approved by the Board. The insurance carrier appears to have been aware that future medical expenses resulting from the injury might not be covered by the release.[2]

Upon receipt of the letter in which additional surgery had been recommended, counsel for the insurance carrier wrote to the Board on July 12, 1960, inquiring whether or not the employer was responsible for furnishing such additional surgery in the hope of improving the vision. Three days later the Board replied that the appellant's signature on the compromise and release should end the claim. However, on August 3, 1960, after a second examination by the eye specialist and at the instance of the Commissioner of Labor for Alaska,[3] the appellee insurance carrier apparently provided transportation to San Francisco for the appellant and the performance there of the additional surgery recommended by the specialist. Despite this second operation the appellant failed to regain his sight and is presently blind in his left eye. He attributes his plight to the negligent and wanton conduct of the appellees in needlessly delaying six weeks before providing him with the medical care which, he alleges, it was their statutory duty to actively furnish.

Thus we have for determination in this case the question whether an employer owes an active duty to provide medical care for an employee who has received a compensable injury and, if such a duty exists, whether the Alaska Workmen's Compensation Act (hereinafter referred to as the act) provides the exclusive remedy for the breach of that duty. The answer, we believe, is to be found in the provisions of the act itself.

To begin, every employer is made liable for and must secure payment to his employees of the compensation payable under the act, including medical services and supplies.[4] This liability of the employer is exclusive and in place of all other liability,

2. The validity of the compromise and release mentioned in the text of the opinion is collaterally in dispute.

3. The Alaska Workmen's Compensation Act provides that the Commissioner of Labor and one representative each of labor and industry shall compose the Alaska Workmen's Compensation Board.

The Commissioner is designated as Chairman of the Board and is also its executive officer empowered to perform all acts necessary to carry into effect all provisions of the act. S.L.A.1959, ch. 193, § 25(1) [AS 23.30.005].

4. S.L.A.1959, ch. 193, § 3 [AS 23.30.045 (a)].

"except that if an employer fails to secure payment of compensation as required by this Act, an injured employee * * * may elect to claim compensation under this Act, or to maintain an action at law * * * for damages on account of such injury or death." [5]

Extremely pertinent to the issue before us are the following provisions of section 6 of the act [AS 23.30.095]:

"(1) The employer shall furnish such medical[,] surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require. Whenever medical care is required, the injured employee may designate any licensed physician within the state to render such care except in cases where, in the judgment of the Board, care and/or treatment can best be administered by the selection of another physician. Upon procuring the services of such physician, the injured employee shall give proper notification of his selection to the employer within a reasonable time after first being treated. * * * If the employee is unable to designate a physician and the emergency nature of the injury requires immediate medical care, or if he does not desire to designate a physician and so advises the employer, the employer shall designate the physician. The foregoing provision shall not, however, deprive the employee from subsequently designating a physician for continuance of required medical care. * * *"

The act further provides that an employer required to secure the payment of compensation under the act who fails to secure such compensation shall be guilty of a misdemeanor and, upon conviction, shall be punished therefor.[6] Every employer who comes under the provision of the act shall insure his liability thereunder or shall furnish the Board with proof of his financial ability to pay direct the compensation to which an employee of his may be entitled.[7] Finally, in connection with matters here under consideration, the act declares that every policy of insurance issued to an employer shall be considered to have written therein, among others, these provisions:[8] that the insurer assumes in full all of the obligations imposed by the act upon the insured to pay physician's fees, nurses charges, hospital services and supplies, prosthetic devices, transportation charges to the nearest point where adequate medical facilities are available, burial expenses, compensation or death benefits;[9] that the policy is made subject to the provisions of the act "relative to the liability of the insured employer to pay" the items above enumerated;[10] that the insurer shall promptly pay to the person or persons entitled to the same all benefits conferred by the act, including the foregoing enumerated items;[11] and that all claims for such benefits "may be made directly against either the employer or the insurer, or both," and the order or award of the Board may likewise be made against the employer, his insurer, or both.[12]

Under the present wording of the act we do not believe that it was the intent of the legislature to place upon an employer the affirmative duty to select and otherwise arrange for medical and surgical care for the injured workman, except in the two situations hereinafter mentioned.

5. S.L.A.1959, ch. 193 § 4 [AS 23.30.055].
6. S.L.A.1959, ch. 193, § 31 [AS 23.30.255(a)].
7. S.L.A.1959, ch. 193, § 36 [AS 23.30.075].
8. S.L.A.1959, ch. 193, § 40(4) [AS 23.30.030].
9. S.L.A.1959, ch. 193, § 40(4)(a) [AS 23.30.030(1)].
10. S.L.A.1959, ch. 193, § 40(4)(b) [AS 23.30.030(2)].
11. S.L.A.1959, ch. 193, § 40(4)(d) [AS 23.30.030(4)].
12. S.L.A.1959, ch. 193, § 40(4)(f) [AS 23.30.030(6)].

While section 6 of the act states that the employer *"shall furnish* such medical [and] surgical treatment * * * for such period as the nature of the injury or the process of recovery may require" [emphasis added], it is apparent from a reading of the remainder of that section and the provisions of the act relating to employer's insurance coverage that the liability of the employer is to pay for the medical services, not to arrange for them. Under the act, the injured employee makes his own selection of any licensed physician within the state, except when in its judgment the Board thinks some other selection should be made.[13] In either event, the employee has a reasonable time after first being treated within which to notify the employer of his selection.

Only if the employee is unable to designate a physician and the emergency nature of the injury requires immediate medical care or if the employee does not desire to designate a physician and so advises the employer does the act require the employer to designate the physician. This case does not fall within either of the exceptions stated. Dr. Leer, the eye specialist who examined the appellant on June 9, 1960, advised him of the need for prompt additional surgery.

We are not advised in this case whether the appellant in the first instance selected Dr. Shuler of Sitka to be his physician or whether he did not desire to make a selection and the doctor was therefore selected by the employer. What appears to be the controlling fact is that the postoperative examination of June 9, 1960, was made by Dr. Leer at the specific request of Dr. Shuler and the insurance company. Dr. Leer advised appellant that there was no choice but to attempt detachment surgery and further advised appellant that he was

going to so recommend in writing to Dr. Shuler, the insurance company and to Drs. Hicks and Stellwagen who had performed the first operation. This he did, sending a copy also to the Board.

It would seem to make no difference at this point whether Dr. Shuler had been originally selected by the appellant or by the employer and that selection acquiesced in by the appellant. Dr. Leer was acting on behalf of both the appellant and Dr. Shuler and the employer's insurance carrier. Under the circumstances the appellant had a right to assume that Dr. Leer's recommendation would be treated by all concerned as coming directly from him.

From the examination onward, unreasonable delay and inaction occurred. Although Dr. Leer recommended that early surgery be performed, he did not write his recommendation until eight days after the examination and on June 17, 1960. Twenty five days after the recommendation was mailed, the insurance company directed a slanted and self-serving inquiry to the Board dated July 12, 1960, asking if it was responsible for the expense of further medical treatment in view of the compromise and release of March 21, 1960, which had paid appellant for the total loss of his eye.

In the meantime the Board had taken no action whatsoever on Dr. Leer's recommendation. As we interpret section 6(1) of the act an injured employee has no right to select an out-of-state physician without the approval of the Board.[14] It is our belief that upon receipt of a copy of Dr. Leer's recommendation the Board should have treated it as a request from appellant for the employment of an out-of-state physician and should have acted on the request without delay. Instead, upon

13. As we read section 6 of the act, the selection by the employee of a physician outside the state would require a ruling by the Board that in its judgment care or treatment could best be administered by such out-of-state physician.

14. S.L.A.1959, ch. 193, § 6(1) states in part:

"Whenever medical care is required, the injured employee may designate any licensed physician within the state to render such care except in cases where, in the judgment of the Board, care and/or treatment can best be administered by the selection of another physician."

receipt of the inquiry from the insurance company, the Board promptly replied to the insurance company stating that the executed compromise and release should end appellant's claim for further medical treatment at the company's expense. No copies of the insurance company's letter nor the Board's reply were sent to Dr. Shuler or the appellant, who undoubtedly continued to believe that Dr. Leer's recommendation was still under consideration by those responsible for taking action.

Finally, on August 3, 1960, the Board called the insurance company and arranged for appellant's transportation and surgical services. What prompted this reversal in position and belated action by the Board is not entirely clear from the record.

■ If anyone deserves to be criticized for the manner in which this case was handled, it is the Board because of its failure to promptly advise the appellant on how to proceed when it was informed by Dr. Leer of the appellant's urgent need for additional surgery by an out-of-state doctor. We hold to the view that a workmen's compensation board or commission owes to every applicant for compensation the duty of fully advising him as to all the real facts which bear upon his condition and his right to compensation, so far as it may know them, and of instructing him on how to pursue that right under the law.[15]

The construction we have placed upon the present act as relieving the employer under the facts of this case from designating the physician and furnishing medical and surgical care in the first instance is further borne out by the fact that the legislature saw fit to eliminate from section 6 of the 1959 act the following italicized words which appeared in a comparable section of our prior workmen's compensation statute:

The employer shall *promptly provide* for an injured employee such medical, surgical * * * or other attendance or treatment * * * for such period as the nature of the injury or the process of recovery may require * * *. *The employer shall have the exclusive right, and it shall be his duty to select and furnish the necessary physicians, surgeons and hospitals * * * for the furnishing of such services and treatments. * * *[16]*

■ Thus in 1959 the legislature not only relieved the employer of the responsibility to "promptly provide" care and treatment for injured employees and took away from him the exclusive right and duty to select and furnish doctors and hospitals for such care and treatment, but also gave to the injured employee the right in the first instance to select the physician and proceed to be treated, leaving the liability for payment of all charges incurred in the process, however, to the employer and his insurer.

■ The appellant sets forth certain dire consequences which will follow if the act is interpreted to mean that an employer has no affirmative duty to provide needed medical attention for an injured employee. The employee, he says, will have a difficult time contracting with doctors and hospitals without insurance company backing. Often the workman will have to obtain a loan before he will be accepted for treatment. In some cases he may forego needed treatment rather than run the risk of the insurance carrier avoiding liability. Those

15. See Cole v. Town of Miami, 52 Ariz. 488, 83 P.2d 997, 1000 (1938); Yurkovich v. Industrial Accident Bd., 132 Mont. 77, 314 P.2d 866, 869–871 (1957), in which the court declared: "The Workmen's Compensation Act was enacted for the benefit of the employee. The Industrial Accident Board is a state board created by legislative act to administer this remedial legislation, and under the act the Board's first duty is to administer the act so as to give the employee the greatest possible protection within the purposes of the act. Compare Miller v. Aetna Life Ins. Co., 101 Mont. 212, 220, 53 P.2d 704. * * *"

16. Section 43–3–2 A.C.L.A.1949, as amended by S.L.A.1953, ch. 60, § 2, and S.L.A. 1955, ch. 141, § 2, and finally repealed by S.L.A.1959, ch. 193, § 42.

things may all very well be but they would not justify us in giving a judicial construction to the act which is contrary to the apparent intent of the legislature that, absent the exceptions mentioned in section 6 of the act, the only affirmative duty of the employer or the insurance carrier in a case such as the appellant's is that of paying for all necessary medical expenses.

In view of our decision, we find it unnecessary to consider any other issue raised on this appeal.

Judgment affirmed.