Theodore A. **BOHLMANN**, Appellant,

v.

**ALASKA CONSTRUCTION & ENGI-NEERING, INC.,** North American Spe-cialty Insurance, Its Workers' Compen-sation Carrier, and Wilton Adjustment Service, Its Workers' Compensation Ad-juster, Appellees.

No. S–12553.

Supreme Court of Alaska.

April 17, 2009.

Theodore A. Bohlmann, pro se, Colfax, Washington, Appellant.

Robin Jager Gabbert and Merrilee S. Har-rell, Russell, Wagg Gabbert & Budzinski, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

EASTAUGH, Justice.

**I. INTRODUCTION**

To what extent must the Alaska Workers' Compensation Board inform or guide pro se claimants? Alaska Statute 23.30.110(c) re-quires denial of a workers' compensation

claim if the claimant does not file a request for a hearing within two years after the employer files a controversion notice. Pro se claimant Theodore Bohlmann filed his request for hearing August 31, 2005, slightly more than two years after his employer filed a notice of controversion on August 6, 2003. The board then denied his claim. Because the board should have corrected the employer's erroneous assertion made at a July 2005 prehearing conference that the claim was already time barred, we reverse and remand so that the board may determine the merits of Bohlmann's compensation rate claim.

## II. FACTS AND PROCEEDINGS

Theodore Bohlmann began working as an excavation operator for Alaska Construction & Engineering (AC & E) at an Eklutna rock quarry in late June 2001. On July 29, 2001, a falling boulder and several smaller rocks hit him when he got out of his excavator at the work site. Bohlmann was pinned under the rocks for about half an hour before being taken to the hospital. He broke his left ankle, left leg, and some toes in his left foot, and he had a deep cut on his right knee that required surgery. AC & E initially paid him temporary total disability (TTD) benefits at a rate of $168 per week; it later paid him permanent partial impairment (PPI) benefits.

Bohlmann filed a pro se claim for adjustment of his compensation rate on February 11, 2002. He asserted, apparently based on advice he received from staff at the Division of Workers' Compensation,[1] that his rate should have been calculated using AS 23.30.220(a)(10) rather than AS 23.30.220(a)(6). AC & E filed an answer denying Bohlmann's claim, but did not file a notice of controversion. At two 2002 prehearing conferences, the prehearing officer told Bohlmann he would have to file and serve an affidavit of readiness for hearing within two years after the employer controverted his claim.

On July 10, 2003, Bohlmann filed another workers' compensation claim. It requested an adjustment in his compensation rate based on overtime he said had not been included when his compensation was calculat-ed. On August 6, 2003, AC & E filed a controversion notice controverting the compensation rate adjustment claim and asserting that Bohlmann's compensation rate had been "correctly computed under AS 23.30.220(a)(6)." AC & E's notice did not specify the date of the claim or claims it controverted. From September to December 2003, Bohlmann filed four more claims, three of which claimed an unfair or frivolous controversion.

Over the next few years a board designee held several prehearing conferences on various issues and claims. An attorney represented Bohlmann for about eight months but did not file an affidavit of readiness for hearing. At a prehearing conference on July 20, 2005, Bohlmann, who was by then again pro se, asked to amend his June 8, 2005 TTD benefits claim to include a compensation rate adjustment claim. AC & E objected, contending that Bohlmann had previously filed compensation rate adjustment claims that were barred by AS 23.30.110(c). The record does not indicate that the board designee who conducted the July 20 prehearing conference informed Bohlmann either that the time bar in subsection .110(c) had not in fact run yet or that the deadline for submitting an affidavit of readiness for hearing was actually August 6, 2005, two years after AC & E had filed its notice of controversion. With the assistance of division staff, Bohlmann filed on August 31, 2005 an affidavit of readiness for hearing in which he requested a hearing on claims he filed on September 9, 2003; September 16, 2003; October 20, 2003; and December 10, 2003. AC & E filed an opposition.

The parties stipulated to a hearing on the applicability of AS 23.30.110(c) to Bohlmann's rate adjustment claims; the hearing took place in January 2006. AC & E presented testimony from the workers' compensation officer who handled most of the prehearing conferences in Bohlmann's case. She testified that as far as she remembered, the prehearing conference summaries accurately reflected what happened at the prehearing conferences and that she had, on several

---

1. We refer to division staff and board staff inter-    changeably in this opinion.

occasions, informed Bohlmann that he needed to file an affidavit of readiness for hearing within two years of the filing of a controversion. Bohlmann was pro se and did not testify. He mentioned in his opening statement that he had difficulty "working through the workers' comp system" and that he was in contact with division staff "getting advice." He argued in his closing statement that (1) he thought the controversion had been lifted; (2) he had trouble filling out the affidavit of readiness for hearing that he successfully submitted; and (3) his affidavit of readiness was only about twenty days late.

The board ruled that Bohlmann's "claim for a compensation rate adjustment [was] denied and dismissed pursuant to AS 23.30.110(c)." It found that subsection .110(c)'s two-year period for filing an affidavit of readiness for hearing began running when AC & E filed the August 6, 2003 controversion notice; that division staff had told Bohlmann the consequences of failing to file a timely affidavit; and that Bohlmann did not file an affidavit until August 31, 2005, about twenty-five days after the two-year period for filing a hearing request expired. The board decided that Bohlmann's belief that the controversion had been lifted and the fact that his affidavit was "only twenty days late" did not justify his untimeliness. It further found that "even if the August 31, 2005 [affidavit of readiness for hearing] were not late, the claim for a compensation rate adjustment would still be barred, as the [affidavit of readiness for hearing] applied only to [workers' compensation claims] other than the ones requesting the rate adjustment."

Bohlmann appealed to the Alaska Workers' Compensation Appeals Commission. He raised or seemed to raise three appellate arguments to excuse missing the filing deadline: (1) he had received inadequate assistance from the board; (2) the board had broad power to extend the deadline and abused its discretion in not accepting a late-filed request for hearing; and (3) his former

attorney had not adequately represented his interests. AC & E responded that (1) the time bar in subsection .110(c) is not discretionary; (2) Bohlmann had plenty of notice that he needed to file an affidavit of readiness for hearing; and (3) no facts in Bohlmann's case justified tolling the statute.

The appeals commission affirmed. It decided that there was substantial evidence in the record that Bohlmann filed his affidavit of readiness for hearing more than two years after his rate adjustment claims were formally controverted and that he was adequately informed of the time bar in AS 23.30.110(c) and the consequences of filing an untimely request. It decided that because the time bar is statutory, the board had no equitable power to excuse his late filing.

Bohlmann appeals. He is pro se on appeal.

## III. DISCUSSION

### A. Standard of Review

■■■■ In workers' compensation appeals from decisions of the appeals commission, we review the commission's decision because it is the final administrative action.[2] In deciding whether the appeals commission erred in reviewing the board's factual findings, discretionary decisions, and legal rulings, we independently assess the board's rulings and in doing so apply the appropriate standards of review. Proper application of a statute of limitations presents a question of law to which we apply our independent judgment.[3] Applying the independent judgment standard, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[4] When an agency interprets and applies its own regulations, we review the agency action for an abuse of discretion.[5] Because the appeals commission and the board appear to have engaged in a fact-based analysis of whether the board satisfied its duty adequately to advise Bohlmann of his

**2.** *Barrington v. Alaska Commc'n Sys. Group, Inc.,* 198 P.3d 1122, 1129 (Alaska 2008).

**3.** *Bailey v. Texas Instruments, Inc.,* 111 P.3d 321, 323 (Alaska 2005).

**4.** *Seybert v. Cominco Alaska Exploration,* 182 P.3d 1079, 1089 (Alaska 2008).

**5.** *J.L. Hodges v. Alaska Constructors, Inc.,* 957 P.2d 957, 960 (Alaska 1998).

rights and how to secure them, we review the board's decision for abuse of discretion.

## B. The Board Should Correct Mistaken Information.

Bohlmann argues that board staff failed to adequately advise him how to preserve his right to compensation. Before considering that contention, we must consider what duty the board or the division owes self-represented claimants to advise them of claim procedures.

Alaska Statute 23.30.110(c) sets out the procedure a party must follow to request a hearing before the board and the deadlines related to this request. It provides in part, "If the employer controverts a claim on a board-prescribed controversion notice and the employee does not request a hearing within two years following the filing of the controversion notice, the claim is denied." [6] We have held that subsection .110(c)'s two-year period begins to run only after an employer controverts an employee's written workers' compensation claim.[7] The board found, and no one disputes, that AC & E's August 6, 2003 controversion notice "start[ed] the AS 23.30.110(c) time clock" so that Bohlmann should have filed his affidavit of readiness for hearing by August 6, 2005.

A central issue inherent to Bohlmann's appeal is the extent to which the board must inform a pro se claimant of the steps he must follow to preserve his claim. The parties agree that the board designee who presided at the prehearing conferences gave Bohlmann general information about the two-year time bar. The board and then the appeals commission determined that Bohlmann had been adequately and correctly informed of the time bar and the consequences of not filing an affidavit of readiness for hearing.

In *Richard v. Fireman's Fund Insurance Co.* we held that the board must assist claimants by advising them of the important facts of their case and instructing them how to pursue their right to compensation.[8] We have not considered the extent of the board's duty to advise claimants. The appeals commission emphasized that division staff have a duty to be impartial and stated that "[a]cting on behalf of one party against another or pursuing a claim on behalf of one party in a matter before the board would violate the duty of the adjudicators." The appeals commission determined that the prehearing conference officer fulfilled the requirements of *Richard* by informing Bohlmann in general terms of the two-year time bar.

It may be arguable in such a case that the board had a duty to tell the claimant that the two-year period was running; it may also be arguable that it had a duty to tell him when the period began running, or even the specific date on which the deadline would expire. But we do not need to consider the full

---

**6.** AS 23.30.110(c) provides:

Before a hearing is scheduled, the party seeking a hearing shall file a request for a hearing together with an affidavit stating that the party has completed necessary discovery, obtained necessary evidence, and is prepared for the hearing. An opposing party shall have 10 days after the hearing request is filed to file a response. If a party opposes the hearing request, the board or a board designee shall within 30 days of the filing of the opposition conduct a pre-hearing conference and set a hearing date. If opposition is not filed, a hearing shall be scheduled no later than 60 days after the receipt of the hearing request. The board shall give each party at least 10 days' notice of the hearing, either personally or by certified mail. After a hearing has been scheduled, the parties may not stipulate to change the hearing date or to cancel, postpone, or continue the hearing, except for good cause as determined by the board. After completion of the hearing the board shall close the hearing record. If a settlement agreement is reached by the parties less than 14 days before the hearing, the parties shall appear at the time of the scheduled hearing to state the terms of the settlement agreement. Within 30 days after the hearing record closes, the board shall file its decision. If the employer controverts a claim on a board-prescribed controversion notice and the employee does not request a hearing within two years following the filing of the controversion notice, the claim is denied.

**7.** *Jonathan v. Doyon Drilling, Inc.,* 890 P.2d 1121, 1124 (Alaska 1995).

**8.** *Richard v. Fireman's Fund Ins. Co.,* 384 P.2d 445, 449 (Alaska 1963). In *Richard* we held that the board has a duty "of fully advising [a claimant] as to all the real facts which bear upon his condition and his right to compensation, so far as it may know them, and of instructing him on how to pursue that right under the law." *Id.* at 449.

extent of the duty here. The board designee or the board should have corrected the erroneous assertion made by AC & E at the July 20, 2005 prehearing conference that the subsection .110(c) deadline had already run, but did not do so. Alternatively, the designee or the board should at least have told Bohlmann specifically how to determine whether, as AC & E asserted, the deadline had already run and how to determine the actual deadline. This minimal information would have made it clear to the claimant both the correct deadline and that he still had more than two weeks in which to submit the required affidavit.

By attempting at that conference to amend his June 2005 claim to include a claim for compensation rate adjustment, Bohlmann manifested an intent to prosecute the rate adjustment claim.[9] AC & E's July 20, 2005 contention that the rate adjustment claim was already barred was incorrect; in fact, Bohlmann had until August 6, 2005 in which to file his affidavit of readiness.[10] We do not need to decide here whether the prehearing officer had a duty to tell Bohlmann the exact date, August 6, by which he needed to file an affidavit of readiness for hearing in order to preserve his claim. Given AC & E's incorrect statement about the timeliness of the rate adjustment claim and Bohlmann's request to include a compensation rate adjustment claim in the later claim, the prehearing officer should have told Bohlmann in more than general terms how he might still preserve the claim, or at least specifically how Bohlmann could determine whether AC & E was correct in contending that the claim was already barred. This requirement is similar to our holdings about the duty a court owes to a pro se litigant.[11]

We have held that a trial court has a duty to inform a pro se litigant of the "necessity of opposing a summary judgment motion with affidavits or by amending the complaint."[12] We likewise have held that a trial court must tell a pro se litigant that he needs an expert affidavit in a medical malpractice case[13] and must inform him of deficiencies in his appellate paperwork, giving him an opportunity to correct them.[14] When a pro se litigant alerted a trial court that the opposing party had not complied with her discovery requests, we held that the court should have informed her of the basic steps she could take, including the option of filing a motion to compel discovery.[15] In evaluating the accuracy of notice of procedural rights by an opposing party, we have noted that pro se litigants are not always able to distinguish between "what is indeed correct and what is merely wishful advocacy dressed in robes of certitude."[16] The board, as an adjudicative body with a duty to assist claimants, has a duty similar to that of courts to assist unrepresented litigants.

■ Here, the board at a minimum should have informed Bohlmann how to preserve his claim or specifically how to evaluate the accuracy of AC & E's representation that the claim was time barred. Its failure to recognize that it had to do so in this case was an abuse of discretion.[17] Its failure to do so is inconsistent with the appeals commission's

**9.** See *Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003) (noting pro se litigant's attempts to inform court of discovery difficulties).

**10.** In its January 13, 2006 hearing brief before the board, AC & E asserted that Bohlmann had until August 6, 2005 to request a hearing. The board agreed that the deadline was August 6, 2005.

**11.** See *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (stating that trial judge should inform pro se litigant of proper procedure for action litigant is obviously attempting to accomplish); *cf. Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 593 (Alaska 2007) (noting that court notified pro se litigant of deadlines for motions).

**12.** *Hymes v. Deramus*, 119 P.3d 963, 966 (Alaska 2005) (quoting *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1273 (Alaska 2001)).

**13.** *Id.* at 966.

**14.** *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 795 (Alaska 2002).

**15.** *Gilbert*, 64 P.3d at 129.

**16.** *Hymes*, 119 P.3d at 967.

**17.** *Snyder v. American Legion Spenard Post 28*, 119 P.3d 996, 1001 (Alaska 2005) (reviewing court's decision on guidance to pro se litigant for abuse of discretion).

conclusion that division staff did all that *Richard* required.

Correcting AC & E's misstatement or telling Bohlmann the actual date by which he needed to file an affidavit of readiness for hearing to preserve his claim would not have been advocacy for one party or the other.[18] Indeed, at oral argument before us, counsel for AC & E stated that it would have been "just fine" for a board employee to have informed Bohlmann of the actual deadline for filing an affidavit of readiness for hearing. Because there is no indication in the appellate record that the board or its designee informed Bohlmann of the correct deadline or at least how to determine what the correct deadline was, the board should deem his affidavit of readiness for hearing timely filed.[19] This is the appropriate remedy because the board's finding that Bohlmann "had proved himself capable of filing claims and petitions even absent having counsel"[20] is consistent with a presumption that Bohlmann would have filed a timely affidavit of readiness had the board or staff satisfied its duty to him.

## IV. CONCLUSION

We REVERSE the decisions of the appeals commission and the board and REMAND to the appeals commission with instructions to remand to the board for further proceedings consistent with this opinion.

---

18. *See* John M. Greacen, *Legal Information v. Legal Advice Developments During the Last Five Years*, 84 JUDICATURE 198, 198–99 (2001) (stating that answering questions about deadlines and due dates is legal information).

19. *Cf. Crum v. Stalnaker*, 936 P.2d 1254, 1258 (Alaska 1997) (noting agency's failure to provide information when it had duty to do so).

20. The commission held on appeal that substantial evidence supported this finding.