**James APONE, Appellant,**

v.

**FRED MEYER, INC., Appellee.**

No. S–12748.

Supreme Court of Alaska.

March 19, 2010.

---

James Apone, pro se, Anchorage.

Erin K. Egan, Russell, Wagg, Gabbert & Budzinski, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE and CHRISTEN, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

An attendant at a self-service gas station sought workers' compensation benefits, alleging that his exposure to fumes and exhaust at work caused him to be disabled. His employer denied the compensability of the claim. After a hearing, the Alaska Workers' Compensation Board decided that the employee had not established his claim by a preponderance of the evidence and denied it. The superior court affirmed the board. Because substantial evidence in the record supports the board's findings and because the board did not commit legal error in its treatment of the employee's experts, we affirm the board's decision.

## II. FACTS AND PROCEEDINGS

James Apone worked at the self-service Fred Meyer gas station on Abbott Road in Anchorage beginning in early 2002. His duties included assisting customers, cleaning the pumps and any spills that occurred, operating the cash register, and stocking items in the kiosk near the pumps. He experienced numerous physical symptoms, which he attributed to his work environment. Apone left work on December 22, 2002, because he was ill; he felt dizzy, short of breath, nauseous, and faint. At home, he had chills and was short of breath; he testified that after "many hours" he passed out. He returned to work the next day, and after a few hours, he felt the same symptoms he had experienced the day before. He was sick for the next few days.

Apone sought medical care from Dr. T. Noah Laufer, M.D., on December 26, 2002. Dr. Laufer noted that Apone had "had a very stressful last year"[1] but also stated that Apone's symptoms "would fit with fume or exhaust related symptoms." Dr. Laufer asked Apone to "avoid exposure to fumes and exhaust at work until it [was] clear what [had] caused his symptoms." Apone filed a report of injury with Fred Meyer on December 30, 2002. That same day, Dr. Laufer told Fred Meyer that Apone needed to avoid exposure to gas fumes or exhaust. Fred Meyer paid temporary total disability (TTD) benefits to Apone for about four months.

To assess Apone's condition, Dr. Laufer first ordered a cardiac stress test, which was essentially normal. Apone apparently told Dr. Laufer that he became short of breath, with wheezing and coughing, after the stress test. Dr. Laufer noted the possibility of reactive airway disease (asthma) and ordered a methacholine challenge pulmonary function test. The test result was mostly normal; there was slight evidence of airway reactivity at the maximum concentration of methacholine.

Beginning in February 2003 Apone consulted with Dr. Richard Newman, a chiropractor. Dr. Newman diagnosed Apone with an "intolerance reaction to gasoline fumes" as well as "xiphoid-sternal strain-inflammation syndrome"[2] and cellulitis. Dr. Newman noted that even though Apone had previously been treated for chest pain and respiratory problems, Apone now also suffered from nausea, headache, and mental disorientation. Dr. Newman began treatment that included "musculo-skeletal, electro-neural and herbal approaches." Apone was later seen by Dr. Jeanne Bonar, M.D., who ordered thyroid tests; the results were essentially normal,

---

1. Apone's T-shirt business, which he had for many years, failed in 2001. Dr. Laufer had previously treated Apone for depression and referred him for psychiatric treatment prior to the alleged injury at Fred Meyer.

2. The xiphoid is the cartilage at the lower end of the sternum. STEDMAN'S MEDICAL DICTIONARY 1262, 1743 (25th ed.1990).

although one test showed that Apone might have early subacute thyroiditis. Dr. Bonar referred Apone to Dr. Lee Schlosstein, M.D., a rheumatologist, who diagnosed Apone with fibromyalgia and "desaturation with activity of uncertain significance." [3]

In March 2003 Dr. Brent Burton, M.D., a specialist in toxicology and occupational medicine, conducted an employer's independent medical evaluation (EIME) for Fred Meyer. Dr. Burton concluded that Apone did not have a work-related injury. He attributed Apone's symptoms to probable depression or anxiety with somatic complaints. Fred Meyer filed a controversion notice on April 22, 2003, relying on Dr. Burton's report. On April 25, 2003, Apone filed a workers' compensation claim requesting TTD, permanent partial impairment benefits, medical and transportation costs, penalties, and a second independent medical evaluation (SIME). Fred Meyer filed an answer denying Apone's claim.

The parties stipulated to an SIME. Dr. Timothy Craven, M.D., a specialist in occupational medicine, was the SIME physician. Dr. Craven examined Apone and diagnosed him with chronic fatigue syndrome and "[p]ossible somatic complaints related to psychiatric disorder." Dr. Craven found no evidence that work-related exposure to gasoline or fumes caused Apone's symptoms. He also stated that Apone's work "did not aggravate, accelerate, or combine with a preexisting condition to produce the need for medical treatment or the disability."

Apone continued his treatment with Dr. Newman, who rated Apone as having a thirty-five percent whole person impairment. In September 2004 Dr. Newman noted that Apone had failed to improve as expected over the previous several months and recommended that Apone be referred to a facility that dealt exclusively with environmental illness.

The parties attended a prehearing conference on October 14, 2004, shortly before the hearing on Apone's claim. At the prehearing conference, Fred Meyer raised concerns that the diagnoses made by Dr. Newman were "beyond his expertise," and Apone asked for a continuance "to allow him to obtain an expert witness on toxic exposure." The prehearing conference officer apparently told Apone to raise the continuance issue at the beginning of the hearing.

The board held a hearing on Apone's claim on October 19, 2004. Apone represented himself. In addition to testifying himself, Apone called two witnesses, Pamela Miller, the executive director of Alaska Community Action on Toxics; and Dr. Newman. Fred Meyer's only witness was its EIME physician, Dr. Burton.

Fred Meyer objected to Miller's testifying as an expert in the case and questioned her about her credentials. Miller testified that she was not a medical doctor, but that she had a master's degree in environmental science and twenty-five years of experience in environmental health research and science. Fred Meyer also made a general objection to the testimony of Apone's experts based on *State v. Coon*.[4] The board admitted Miller's expert testimony with the qualification that she was not "trained in diagnosis" and had not examined Apone; it said that it would take under advisement the weight it would give her testimony.

Miller testified about the effects of toxic chemicals in gasoline, particularly benzene, on human health. Miller testified that Apone's symptoms in December 2002 were consistent with exposure to benzene and other toxic substances in petroleum products. She also stated that environmental medical studies showed a correlation between chemical exposure and the development of fibromyalgia and chronic fatigue syndrome, although she acknowledged that not all workers exposed to chemicals at service stations get fibromyalgia. She testified that she had not been able to do any independent testing of the air quality at the gas

---

**3.** Desaturation is defined as "[t]he act, or the result of the act, of making something less completely saturated; more specifically, the percentage of total binding sites remaining unfilled, *e.g.*, when hemoglobin is 70% saturated with oxygen and nothing else, its d[esaturation] is 30%." STEDMAN'S MEDICAL DICTIONARY 421 (25th ed.1990).

**4.** 974 P.2d 386 (Alaska 1999).

station because she was subpoenaed so close to the hearing time and faulted Fred Meyer for not having some type of system in place to monitor the concentrations of fumes in the air.

When Apone called Dr. Newman to testify, Fred Meyer conducted voir dire because it questioned Dr. Newman's expertise. Dr. Newman testified that he had a degree from a chiropractic college and was a diplomate in nutrition. He stated that he did not have any certification in toxicology and that less than ten percent of his practice dealt with patients with chemical exposure problems. Dr. Newman testified that he did not diagnose a toxicological condition in Apone but said that in his opinion environmental agents had caused some stress and disturbance in Apone's nervous system. Dr. Newman said that "the core" of chiropractic is "abnormality and transmission of the nervous system," so that his evaluation and treatment of Apone was within the scope of chiropractic. He also testified that he was able to determine that Apone had "a specific reactivity" to environmental toxins, particularly to petrochemicals, but could not say where the toxins came from. Dr. Newman indicated that he could not entirely exclude the possibility of a psychological explanation for Apone's condition.

Apone testified about his prior work history and the development of his symptoms. He gave a history of his treatment with different doctors and talked about the doctors' failure to test his blood for exposure to toxins. He presented general information from books and the internet about chemical exposure, medical mistakes, fibromyalgia, and chronic fatigue syndrome. Apone described his physical condition as "like running a marathon and then being hit by a bus," with long-term pain, headaches, muscle and joint aches, sore throat, and exhaustion.

Dr. Burton, Fred Meyer's EIME physician, testified that he was board certified in occupational medicine and toxicology. He indicated that he had examined Apone as well as reviewed Apone's medical records and laboratory results and had come to the conclusion that Apone's condition was not related to his work at Fred Meyer. During his examination of Apone, Dr. Burton took a detailed work history about Apone's job at the gas kiosk. According to Dr. Burton, air testing was not needed to evaluate Apone's exposure because of the work history Apone presented. Dr. Burton testified that Apone's lab results were essentially normal and that Apone had "expressed symptoms of depression and anxiety along with a variety of somatic complaints that [could] not be explained on the basis of objective findings." Dr. Burton concluded that the best explanation for Apone's symptoms was a diagnosis of depression with some anxiety.

Dr. Burton took exception to Pamela Miller's conclusions about any link between Apone's illness and his work because, according to Dr. Burton, there was "no consideration of the dose response relationship." Dr. Burton also disagreed with Dr. Newman's conclusions, asserting that Dr. Newman was simply making an association between Apone's work and his illnesses based on a temporal relationship.

In its November 2004 decision, the board concluded that Apone had failed to establish a compensable claim. The board used its three-step analysis to evaluate the claim.[5] It found that Apone had attached the presumption of compensability through Dr. Newman's testimony and his reports. It stated that the claim was based on "highly technical medical considerations and that the claimant ha[d] presented medical evidence necessary to make that connection." It then decided that Fred Meyer had rebutted the presumption through Dr. Burton's testimony and report as well as Dr. Craven's and Dr. Schlosstein's reports. Finally, the board concluded that Apone had not proven his claim by a preponderance of the evidence. The board first decided that Miller's testimony could not be relied on "to show any connection between [Apone's] alleged exposure in the workplace and his current claimed medical problems." It discounted Dr. Newman's expertise, writ-

---

**5.** *See AT & T Alascom v. Orchitt,* 161 P.3d 1232, 1240 (Alaska 2007) (citing *Bradbury v. Chugach Elec. Ass'n,* 71 P.3d 901, 905–06 (Alaska 2003))

(summarizing three-step analysis in workers' compensation cases).

ing that Dr. Newman did not "have the requisite expertise to diagnose the employee's condition and to formulate an opinion as to whether the employee's condition is related to his alleged exposure in the workplace." The board decided to rely on the opinion of Dr. Burton and "disregard[ ]" the opinions of Dr. Newman and Miller. It found that Apone had not met his burden of proof and rejected his claim.

Apone appealed to the superior court. In the superior court, Apone argued that neither the board nor his employer had given him adequate assistance in preparing and presenting his case. He also asserted that the board "did not recognize his expert witness's statements regarding his claim" and that it abused its discretion by not doing so. He complained that Fred Meyer had failed to give him information about toxic substances he was exposed to at his job. He argued that the board should have awarded him compensation and questioned the integrity of the hearing process.

The superior court affirmed the board's decision, holding that substantial evidence in the record supported the board's decision that Apone had not proven his claim. Although the court stated that it "would not uphold a finding that chiropractors are per se unqualified to render a medical opinion" or that Miller was not an expert, it concluded that the board could properly give more weight to Dr. Burton's testimony than to the testimony of Miller and Dr. Newman. The court decided that it was not error for the board to disregard Miller's testimony on the question whether Apone had suffered an injury as a result of exposure to gas or diesel fumes at his workplace or for the board to permit Dr. Burton to listen to the testimony of other witnesses before answering questions. Finally, the court rejected Apone's contention that the board had the duty to inform him that he needed to present evidence from a medical doctor and determined that Apone had waived his argument that Fred Meyer was required to provide him with information either about his claim or about "the environmental health of his workplace."

Apone appeals.

## III. STANDARD OF REVIEW

■ In a workers' compensation appeal from the superior court, we independently review and directly scrutinize the board's decision.[6] Factual findings are reviewed to see if they are supported by substantial evidence.[7] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[8] In deciding whether substantial evidence supports a finding, we do not "'reweigh the evidence or choose between competing inferences,' but simply determine whether such evidence exists."[9] For legal questions involving no agency expertise, we substitute our judgment and apply the rule of law that is most persuasive in light of precedent, reason, and policy.[10] We review the board's decisions about the admissibility of evidence for abuse of discretion.[11] We will find an abuse of discretion when we are left with the definite and firm conviction that a mistake has been made.[12]

## IV. DISCUSSION

### A. The Board Properly Considered the Testimony of Apone's Expert Witnesses.

■ Apone asserts that the board abused its discretion by "not recognizing" Pamela

**6.** *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 793 (Alaska 2002).

**7.** *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000).

**8.** *Id.* (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

**9.** *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 689 (Alaska 2000) (quoting *Thompson v. United Parcel Serv.*, 975 P.2d 684, 688 (Alaska 1999)).

**10.** *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 946 (Alaska 2006).

**11.** *Municipality of Anchorage v. Devon*, 124 P.3d 424, 429 (Alaska 2005) (citing *DeYonge*, 1 P.3d at 94).

**12.** *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 793 (Alaska 2002).

Miller as an expert witness. He contends that even though she "had the most knowledge about gasoline exposures ... in Alaska," the board "totally discounted" her testimony. Apone also argues that the board improperly evaluated Dr. Newman's testimony because Dr. Newman "presented the most credible evidence relat[ed] to gasoline exposure and [its] relationship to the work injury." Fred Meyer responds that the board acted within its authority in giving less weight to the testimony of Apone's experts.

At the hearing, the board admitted Miller's testimony with the qualification that she was not trained in diagnosis and had not "seen" Apone; the board permitted her to testify "in general about the nature of toxics and their effects on people and the environment." In its final decision, the board stated that because Miller was not a medical doctor, "her testimony cannot be relied on by the employee to show any connection between his alleged exposure in the workplace and his current claimed medical problems."

■ We disagree with Apone's contention that the board failed to recognize Miller as an expert or that it improperly considered her opinion. Interpreting the board's decision in light of the whole record leads us to conclude that the board recognized Miller as an expert but limited the scope of her expert testimony to general information about the effects of toxins on people and the environment. In order to succeed in an occupational disease case, an employee must show "(1) that his disease was caused by the conditions of his employment; and (2) that as a result of those working conditions, the risk of his contracting the disease was greater than that which generally prevails in employment and living conditions." [13] Apone needed to provide other expert testimony to establish the

work-relatedness of his disability and could not rely solely on Miller's testimony because she lacked the expertise to link *his* exposure to *his* illness.

The board did not qualify Miller as an expert in diseases or medicine. Miller herself disclaimed any certification in diagnosis and stated that her role in the case was "to review the scientific and medical literature, and based on the information that [she had] gained in the interview with Mr. Apone, try to summarize the toxicological effects that can ensue from inhalation of fumes from gasoline and diesel fuel."

In spite of the limitations that the board placed on Miller's expert testimony, she offered testimony about the key issue in the case—whether Apone's exposure at Fred Meyer caused an occupational disease—which was not an opinion within the scope of her board-recognized expertise. Miller testified that she "believe[d] that [Apone] suffered both acute and chronic health problems from his exposure to the toxic components of the fuels" and that she "believe[d] [Apone] should receive compensation, medical support, as well as medical surveillance." She also testified that "[Apone's] chronic health problems seem to be associated with his acute and repeated exposure over the months that he was employed at the fuel distribution center." Because Miller was not qualified by the board to give an opinion about the compensability of Apone's injury or about the specific health effects that Apone suffered as a result of his work at the Fred Meyer gas station, the board properly discounted her testimony.[14]

■ Apone's contention that the board impermissibly discounted Dr. Newman's opinion also fails. The opinion or testimony of an employee's treating physician is not entitled

**13.** *Delaney v. Alaska Airlines*, 693 P.2d 859, 861 (Alaska 1985), *overruled on other grounds by Wade v. Anchorage Sch. Dist.*, 741 P.2d 634, 638–39 (Alaska 1987).

**14.** *See Structural Pres. Sys., Inc. v. Petty*, 927 A.2d 1069, 1078–79 (D.C.2007) (quoting *Gonzalez v. United States*, 697 A.2d 819, 826 (D.C.1997) and citing 32 C.J.S. *Evidence* § 526 (1996) and 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 702.04[6] (Joseph M. McLaughlin ed., 2d ed. 1997 & 2003 Supp.))

(noting that expert qualified in one field may not provide opinion beyond scope of her expertise). *See also Fueger v. Case Corp.*, 886 N.E.2d 102, 104 (Ind.App.2008) (holding that expert in one field "cannot offer opinions in other fields absent a requisite showing of competency in that other area"); *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905, 914 (2007) ("Experts may not offer opinions that range too far outside their area of expertise.").

to greater weight than that of an employer's physician.[15] After finding that Apone's claim was based on "highly technical medical considerations," the board used Dr. Newman's testimony and reports to attach the presumption of compensability. From this, it appears the board determined that, considering Dr. Newman's testimony in isolation, he had the required knowledge and experience to provide some support for Apone's claim. However, at the third stage of the presumption analysis, when the board weighed the evidence, it "discounted" Dr. Newman's testimony—it gave it little weight. The board was free to give less weight to Dr. Newman's testimony.[16] It was reasonable for the board to do so: Dr. Newman testified that he did not have any certification in toxicology and that less than ten percent of his patients had problems resulting from toxic exposure. Moreover, even though Dr. Newman diagnosed Apone with "a specific reactivity" to environmental toxins, and particularly to petrochemicals, Dr. Newman also testified that he could not say where the toxins had come from.[17]

Although the board's written decision could be read to suggest that the board did not recognize Miller or Dr. Newman as experts, the board permitted them both to testify as experts. The board simply gave little weight to their testimony when it evaluated the evidence.

## B. Substantial Evidence Supports the Board's Decision.

As we have already noted, the board applied its three-step presumption analysis to Apone's claim.[18] It decided that Apone attached the presumption of compensability, that Fred Meyer rebutted it, and that Apone had not proven his claim by a preponderance of the evidence. In determining that there was no connection between Apone's work-

place exposure and his disability, the board "g[ave] weight" to the opinion of Dr. Burton, Fred Meyer's EIME physician, in part because of "his superior credentials and expertise."

■ Apone argues that the board improperly weighed the evidence in denying his claim. Because the only evidence-related basis for a challenge to the board's decision is that it was not supported by substantial evidence, we interpret Apone's argument as one that the board's decision is not supported by substantial evidence in the record. According to Apone, Miller had "more information about gasoline exposures in Alaska" than Fred Meyer's expert, and Dr. Newman "presented the most credible evidence relating to gasoline exposure and [its] relationship to the work injury." Fred Meyer responds that the board properly relied on the testimony of Dr. Burton, Dr. Craven, and Dr. Schlosstein to reject Apone's claim and that these reports comprise substantial evidence that supports the board's decision.

Dr. Burton's testimony and the reports of Dr. Burton and Dr. Craven provide substantial evidence for the board's finding that Apone failed to establish a compensable claim. Dr. Craven, the SIME physician and a specialist in occupational medicine, examined Apone and reviewed his medical records. Dr. Craven concluded that there was "no evidence for work place exposure to gasoline or diesel fumes causing his symptoms." Dr. Burton testified that there was no link between any of Apone's medical problems and his work at Fred Meyer. Dr. Burton's report reflects a thorough evaluation of Apone's symptoms, medical history, and medical testing. Dr. Burton was board certified in toxicology and occupational medicine. The board's finding concerning the weight to be given to a medical report is conclusive.[19]

---

15. *Smith v. Univ. of Alaska, Fairbanks,* 172 P.3d 782, 793 (Alaska 2007) (citing *Safeway, Inc. v. Mackey,* 965 P.2d 22, 29 (Alaska 1998)).

16. AS 23.30.122. *See also Lindhag v. State, Dep't of Natural Res.,* 123 P.3d 948, 953–54 (Alaska 2005) (holding that board properly relied on expert with more training in environmental medicine).

17. In a March 2003 letter, Dr. Newman wrote that he could not say whether Apone's medical condition was due to work-related exposure to chemicals or was "an eventuality he would have suffered anyway."

18. *See supra* note 5 and accompanying text.

19. AS 23.30.122.

Here, it was reasonable for the board to rely on Dr. Burton's opinion rather than Dr. Newman's because of Dr. Burton's training and practice in toxicology.[20]

In sum, substantial evidence in the record supports the board's finding that Apone did not establish a compensable claim.

### C. The Board Provided Adequate Assistance to Apone.

Quoting *Richard v. Fireman's Fund Insurance Co.*,[21] Apone argues that the board did not fulfill its duty to him as a pro se litigant, but it is difficult to discern precisely what he thought the board needed to do to help him. The superior court interpreted Apone's brief in this regard as arguing that the board should have advised him that he needed to have a medical doctor testify as an expert.

We recently held that the board's duty to assist pro se litigants is similar to the duty of a court.[22] Here, we see nothing to indicate that the board failed in its duty to assist Apone. Apone filed a workers' compensation claim, conducted discovery, and presented expert testimony at his hearing. If Apone is arguing that the board should have told him that he needed a medical doctor to testify at his hearing or helped him secure an expert witness, we agree with the superior court that this type of decision is a strategy decision and beyond what is required of the board. Medical testimony is not required in all workers' compensation cases,[23] so a party must make a strategy decision about whether expert medical testimony is necessary. As we stated in *Kaiser v. Sakata*, "[a]dvising litigants of every possible outcome of every decision is beyond the scope of the court's obligation to the pro se litigant."[24] Apone

apparently knew that he needed some type of expert testimony to prove his claim: he asked for a continuance at the October 14, 2004, prehearing conference so that he could find an expert witness on toxic exposure. The prehearing conference officer told him to raise the continuance issue at the beginning of the board hearing. Instead, Apone presented Miller as an expert in toxins and the environment.

Apone also asserts that the board did not adequately explain the types of benefits available to injured workers and suggests that the board should have given him more information about the discovery process, trial process, and deadlines or that it should have independently investigated his claim. Nothing in the record shows that Apone had difficulties with any of these issues or, if he did, that he alerted the board to his need for assistance.[25] He sent requests for production to Fred Meyer and presented and cross-examined witnesses at the board hearing. His written workers' compensation claim sought a variety of benefits, and his claim was denied not because of the specific benefits he requested but because the board decided that he had not proven by a preponderance of the evidence that his injury was compensable. Based on our review of the record, we hold that the board fulfilled its obligation to assist Apone.

### D. Apone's Other Arguments Are Waived or Lack Merit.

In his brief before us, Apone argues for the first time that the board proceedings violated his constitutional rights to due process and equal protection. Because he did not raise this argument before the board or the superior court, he has waived it.[26] Apone

**20.** *See Cowen v. Wal–Mart*, 93 P.3d 420, 426 (Alaska 2004) (noting that board reasonably discounted testimony of doctor with limited experience).

**21.** 384 P.2d 445, 449 (Alaska 1963).

**22.** *Bohlmann v. Alaska Constr. & Eng'g, Inc.*, 205 P.3d 316, 320–21 (Alaska 2009).

**23.** *Veco, Inc. v. Wolfer*, 693 P.2d 865, 870–71 (Alaska 1985).

**24.** 40 P.3d 800, 804 (Alaska 2002).

**25.** *See id.* (holding that where pro se litigant does not inform court of his difficulties with discovery process, litigant not entitled to greater guidance from court regarding mechanics of that process).

**26.** *See Wagner v. Stuckagain Heights*, 926 P.2d 456, 459 (Alaska 1996). For the same reason, Apone has also waived his argument that Fred Meyer had a duty pursuant to 3 Alaska Administrative Code 26.100 to assist him and that it failed to do so.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

also waived any argument about the SIME process because he did not adequately brief this issue.[27]

Apone raises an argument before us about spoliation of evidence, which appears to be related to his contention, made before the board and the superior court, that Fred Meyer destroyed tapes of him getting sick at work before he could request them in discovery. In July 2004 Apone requested through discovery copies of security tapes from the gas kiosk made while he was employed at Fred Meyer. Fred Meyer responded that any tapes taken during the time of Apone's employment would already have been destroyed because the tapes were not retained indefinitely. Apone has not adequately briefed whether sanctions for spoliation of evidence can apply in a board proceeding.[28] This failure is particularly telling where, as here, the board has a regulation governing discovery sanctions. Given Apone's failure to adequately brief the issue, we decline to reach it.[29]

▮▮▮▮▮▮▮ Finally, Apone maintains that the hearing officer was biased against him. We see no merit in this contention. To show hearing officer bias, a party must demonstrate "that the hearing officer had a predisposition to find against a party or that the hearing officer interfered with the orderly presentation of the evidence."[30] Apone does not point to anything in the record showing that the hearing officer interfered with the presentation of evidence in his case or that she was predisposed to find against him. Apone also claims that the prehearing and hearing officers were "openly [disparaging]" and "rude" to him. Our review of the record gives no indication that the hearing officer interfered with the presentation of evidence, or that any officers were disparaging to Apone.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the board's decision in all respects.

27. *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1257 (Alaska 2007) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004)).

28. *See Peterson*, 93 P.3d at 464 n. 9.

29. 8 AAC 45.054(d). Even were we to reach Apone's claims, he would not prevail, for he has not shown the relevance of the destroyed evidence. The tapes would at most have shown that he became ill at work, but Fred Meyer did not dispute that fact, as it paid him TTD benefits for four months. In dispute was the cause of his illness, and the tapes would shed no light on the cause.

30. *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1246 (Alaska 2007) (citing *Tachick Freight Lines v. Dep't of Labor*, 773 P.2d 451, 453 (Alaska 1989)).