**KENAI PENINSULA BOROUGH, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF COMMUNITY & REGIONAL AFFAIRS, and Emil Notti, Commissioner, Appellees.**

No. S–1785.

Supreme Court of Alaska.

March 4, 1988.

*see Perpetual Bldg. & Loan Ass'n v. Braun,* 242

Kristine A. Schmidt, Deputy Borough Atty., Thomas R. Boedeker, Borough Atty., Soldotna, for appellant.

Marjorie L. Odland, Asst. Atty. Gen., Grace Berg Schaible, Atty. Gen., Juneau, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This appeal arises from the Kenai Peninsula Borough's 1985 property tax ordinance. The ordinance imposed a tax rate that was higher for personal property than for real property. Also, oil and gas property was taxed at the higher rate. The issues presented are (1) whether the differential tax rate is contrary to law, (2) whether the Borough erred by taxing oil and gas production property at the higher rate, (3)

S.E.2d 407 (S.C.1978).

whether Department of Community and Regional Affairs (DCRA) has statutory enforcement authority, and (4) whether the Borough was deprived of due process or equal protection of the laws.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 1985, the Kenai Peninsula Borough Assembly set tax rates for its 1985 property taxes. The Borough established the rate of levy on all real property at 1.75 mills on each dollar of assessed value. The rate of levy on personal property was 2.5 mills. The Borough defined personal property to include "all oil related properties subject to state assessment under AS 43.56."

On June 14, DCRA informed the Borough that the differential tax rate violated state law and constituted a "major error" in the Borough's taxation procedures. DCRA directed the Borough to correct the error by July 1. On June 25, DCRA informed the Borough that the Department of Law agreed with DCRA's conclusion and urged the Borough to adopt a uniform millage as soon as possible, even though the statutory deadline for setting the millage had already passed.

The Borough appealed administratively. The DCRA Commissioner concluded that the differential millage violated state law. The Borough appealed to the superior court, which affirmed the Commissioner's decision. The Borough appeals.

We affirm the decision of the superior court.

## II. STATUTORY FRAMEWORK [1]

The Borough has the power to levy a property tax.[2] If it does so, it must assess, levy and collect the tax against both real and personal property.[3] The property must be assessed at its full and true value.[4]

The state levies a tax on oil and gas exploration, production and pipeline transportation property.[5] A municipality may also levy a tax on oil and gas property "at the rate of taxation that applies to other property."[6] The taxpayer is entitled to a credit against its state tax for tax paid to a borough.[7]

## III. BOROUGH TAXATION OF OIL AND GAS PROPERTY

DCRA argues that the Borough violated former AS 43.56.010(b) by classifying all oil

---

1. This appeal is governed by the statutes in effect in June 1985. Chapter 53 of title 29 was repealed, amended and recodified effective January 1, 1986. Ch. 74, § 88, SLA 1985.

2. Former AS 29.48.010 provided in part:
   Municipalities have the following general powers, subject to other provisions of law:
   . . . .
   (7) to levy taxes and special assessments. . . .
   Former AS 29.53.010 provided:
   Home rule and general law boroughs may levy (1) an areawide property tax for areawide functions, and (2) a property tax limited to the area outside cities for functions limited to the area outside cities. A property tax if levied must be assessed, levied and collected on real and personal property as provided in this chapter.
   Kenai Peninsula Borough is a general law municipality and a second class borough. *See* AS 29.04.020, .030(2).

3. Former AS 29.53.010, *supra* note 2.

4. Former AS 29.53.060(a) provided:
   The assessor shall assess property at its full and true value. . . . The full and true value is the estimated price which the property would

bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels.

5. Former AS 43.56.010 provided in part:
   (a) An annual tax of 20 mills is levied each tax year . . . on the full and true value of taxable property taxable under this chapter.
   (b) A municipality may levy and collect a tax under AS 29.53.045 at the rate of taxation that applies to other property taxed by the municipality. The tax shall be levied at a rate no higher than the rate applicable to other property taxable by the municipality. . . .
   . . . .
   (d) A tax paid to a municipality under AS 29.53.045 . . . shall be credited against the tax levied under (a) of this section for that tax year.

6. *Id.;* former AS 29.53.045(a) (providing that "[a] municipality may levy and collect taxes on taxable property taxable under AS 43.56").

7. Former AS 43.56.010(d), *supra* note 5.

and gas production property as personal property subject to a mill rate higher than that applied to real property. The Borough contends that taxing oil and gas property at the higher rate is permissible because it is not taxed at a rate higher than personal property in the Borough.[8]

Although a borough may tax oil and gas production property, former AS 43.56.-010(b) prohibited the borough from applying a rate higher than that applicable to other taxable property. This limitation was apparently intended to prevent a borough from shifting its fiscal responsibilities away from its general property owners and onto the shoulders of the oil and gas industry, and ultimately, due to the credit against state taxes, onto the state government. In other words, local residents should pay their fair share of the cost of local government rather than casting the burden disproportionately onto the people of the state.

[1] We conclude that the Borough violated former AS 43.56.010(b) because it taxed oil and gas property at a higher rate than it taxed real property in the Borough. If taxing oil and gas property at the higher tax rate deprived the state of revenue, Kenai must reimburse the state.[9]

## IV. LEGALITY OF THE DIFFERENTIAL TAX RATE

DCRA argues that the Borough's differential tax rate is illegal because it violates former AS 29.53.010–.180. The Borough contends that the differential tax rate is legal because it is not specifically prohibited by law.[10]

In *Liberati v. Bristol Bay Borough*, 584 P.2d 1115 (Alaska 1978), several fishermen challenged a local 3% tax on the sale of raw fish, arguing that the borough had no power to impose a sales tax on a specific commodity. We upheld the tax because the authorizing statute neither required a general tax nor limited permissible tax exceptions. *Id.* at 1123. Given the broad grant of taxing authority and the liberal construction of local government powers, we concluded that "[w]e should not be quick to imply limitations on the taxing authority of a municipality where none are expressed." *Id.* at 1121.

The former statutes governing local property taxes are rather more intricate than those authorizing borough sales taxes. *Compare* former AS 29.53.010.–.180 *with* former AS 29.53.415–.420. Notwithstanding the broad construction of the taxing power and the absence of a specific prohibition against a differential tax rate, we believe that the statutes evince a legislative intent to require a unitary tax rate on real and personal property. *See City of Homer v. Gangl*, 650 P.2d 396, 401 (Alaska 1982) (construing former AS 29.53.440 to require uniformity in sales tax within a borough does not offend the rule of liberal construction).

By statute, all property must be assessed at its full and true value.[11] As DCRA argued below, taxing real and personal property at different rates is the functional equivalent of assessing real property at less than its full value:

The practical effect of the differential rate is the same as if the borough had systematically valued all personal property as the statute requires—at full and true value—and had systematically valued all real property at 70% of full value.

8. The independent judgment standard of review applies to the issues raised on appeal; they present questions of statutory interpretation which do not involve complex subject matter or fundamental policy issues. *See National Bank v. State, Dept. of Revenue*, 642 P.2d 811, 815 (Alaska 1982).

9. Former AS 29.53.105(d) provided:
If errors in its assessment, valuation or taxation procedures have resulted in a loss of revenue to the state, the municipality shall reimburse the state for the amount of revenues lost.

10. Local government powers are liberally construed. Alaska Const. art. X, § 1; former AS 29.48.310. Unless otherwise limited by law, a borough may exercise all powers fairly implied in a specific grant of power. Former AS 29.48.-320. The enumeration of certain powers does not imply the exclusion of others. Former AS 29.48.330.

11. Former AS 29.53.060(a), *supra* note 4.

Under the latter approach, if the mill rate were 2.50, then $10,000 of personal property—assessed at full value—would produce a tax of $25. But $10,000 of real property—assessed at 70% of true value—would produce a tax of only $17.50. That procedure would be in flagrant violation of AS 29.53.060, which requires that all property be assessed at full and true value. Kenai has accomplished precisely the same result by its differential mill rate. $10,000 of personal property taxed at 2.5 mills produces a tax of $25. $10,000 of real property taxed at 1.75 mills produces a tax of $17.50.

What the Borough cannot do directly, it cannot do indirectly. *See Idaho Telephone Co. v. Baird,* 91 Idaho 425, 423 P.2d 337, 341 (1967) (given state constitutional requirement of uniformity, legislature must assess all property at the same percentage of cash value and apply a single rate of taxation).

We conclude that former AS 29.53.-010–.180 requires a uniform rate of levy on real and personal property within a borough.

## V. DCRA'S STATUTORY ENFORCEMENT AUTHORITY

The Borough argues that, even if its differential tax rate violates former AS 29.-53.010–.180, DCRA's statutory enforcement authority is confined to correcting procedural errors. The Borough reasons that DCRA overstepped its authority when it intervened in the Borough's exercise of its substantive power to establish the tax rate. DCRA contends that setting the tax rate is a procedure within its statutory enforcement power.

DCRA has the authority to "advise and assist municipalities on procedures of assessment, valuation and taxation, and notify municipalities of major errors in those procedures." AS 44.47.050(19). If a municipality receives notice that its "assessment, valuation or taxation procedures" contain major errors, it must correct the procedure before the next fiscal year begins or file an appeal with the DCRA Commissioner within thirty days.[12] If the Commissioner concludes that a major error exists, the taxing authority must correct its procedures before the beginning of the next fiscal year.[13]

■ The ultimate question is whether establishing the tax rate is a "procedure" under AS 44.47.050(19) and former AS 29.-53.105. Setting the tax rate is merely one step of the property taxation process, which consists of a series of mixed procedural and substantive acts. We believe that the legislature intended to charge DCRA with overseeing the entire local taxation process. We therefore conclude that setting the tax rate is a procedure subject to DCRA's statutory enforcement authority.[14]

---

12. Former AS 29.53.105 provided in part:
    (a) If a municipality receives a notice from the State Assessor that major errors have been found in its assessment, valuation or taxation procedures, the municipality shall correct its procedures before the beginning of the next fiscal year or file an appeal under (b) of this section.
    (b) A municipality may appeal a notice from the State Assessor ... by filing an appeal with the commissioner of community and regional affairs within 30 days after receipt of notice of error.
    (c) The commissioner ... shall render a decision within 60 days.... If the commissioner determines that a major error has been made[,] ... [he] shall notify the municipality of changes that must be made and the municipality shall correct its procedures before the beginning of the next fiscal year.

13. *Id.*

14. Former AS 29.53.170(b) required the Borough to fix its rate of levy before June 15. The Borough argues that DCRA may not force the Borough to redetermine its rate of levy after that date. However, former AS 29.53.105(a) expressly required the Borough to appeal or immediately correct its error. Moreover, in *City of Yakutat v. Ryman,* 654 P.2d 785, 791–92 (Alaska 1982), we ruled that former AS 29.53.-170(b) was merely directory; therefore, a tax levy is not automatically invalid when the taxing authority misses the June 15 deadline. Instead, the tax is valid if the taxing authority substantially complied with the statutory requirements and the party challenging the tax was not substantially prejudiced by the delay. *Id.*

## VI. CONSTITUTIONAL CLAIMS: DUE PROCESS AND EQUAL PROTECTION

The Borough argues that it was deprived of due process of law guaranteed by the Alaska Constitution because it had no opportunity for a hearing before DCRA determined that it had committed a major error. The Borough further argues that it was deprived of due process and equal protection because DCRA arbitrarily and selectively enforces the law against certain cities and boroughs. DCRA contends that the Borough is not a "person" entitled to due process or equal protection, that it received all the process due, and that its selective enforcement is rationally based on the law applicable to local taxing authorities and the lack of oil and gas property in certain geographic areas of the state.

The threshold question is whether the Borough is a "person" entitled to due process or equal protection under the Alaska Constitution. This is an issue of first impression.[15]

The question appears to be well-settled under the federal constitution: a political subdivision of the state may not challenge the validity of a state statute under the due process or equal protection clauses.[16] In defeating an equal protection challenge, the Supreme Court once said:

A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.

*Williams v. Mayor of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015, 1020 (1933).[17]

The question remains whether the state constitution affords protection to the Borough.[18] Most state courts exclude local government entities from state due process and equal protection guarantees. *E.g., Village of Riverwood v. Department of Transp.*, 77 Ill.2d 130, 32 Ill.Dec. 325, 328, 395 N.E.2d 555, 558 (1979) (under the Illinois Constitution, municipal corporation may not assert due process claim against state); *State ex rel. Brentwood School Dist. v. State Tax Comm'n*, 589 S.W.2d 613, 615 (Mo.1979) (en banc) (school districts are not "persons" and may not charge the state with due process violations); *State ex rel. New Mexico State Highway Comm'n v. Taira*, 78 N.M. 276, 430 P.2d 773, 778 (1967) (State Highway Commission not protected by due process clause); *Carl v. Board of Regents*, 577 P.2d 912, 915 (Okla.1978) (state medical school admissions committee not entitled to due process or equal protection); *City of Seattle v. State*, 103 Wash.2d 663, 694 P.2d 641, 645 (1985) (en banc) (city itself not entitled to equal protection, but has standing to assert claims of potential residents); *City of Mountlake Terrace v. Wilson*, 15 Wash.App. 392, 549 P.2d 497, 498 (1976) (city may not assert due process claim against state).

We follow suit, concluding that the Borough is not a "person" and therefore may not assert due process or equal protection claims against its creator, the state. The purpose of the Alaska due process and equal protection clauses is to protect people from abuses of government, not to protect political subdivisions of the state from the

---

**15.** In *City of Homer v. State, Dept. of Natural Resources*, 566 P.2d 1314, 1317 (Alaska 1977), we expressly refused to decide whether a local government is a "person" entitled to due process.

**16.** U.S. Const. amend. XIV, § 1 provides in part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**17.** While the Supreme Court has not revisited this issue in over 50 years, *Williams* is often cited by the circuit courts today. *See Village of Arlington Heights v. Regional Transp. Auth.*, 653 F.2d 1149, 1151–52 (7th Cir.1981); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973); and cases cited therein.

**18.** Alaska Const. art. I, § 7 provides in part: "No person shall be deprived of life, liberty, or property, without due process of law." Article I, § 1 provides in part: "[A]ll persons are ... entitled to equal rights, opportunities, and protection under the law...."

actions of other units of state government.[19]

Thus, the only procedural rights to which the Borough is entitled are those bestowed by statute. DCRA is not subject to the Administrative Procedure Act. AS 44.62.-330. DCRA complied with the notice and appeal procedures in former AS 29.53.105.[20] Given the brief window of opportunity during which DCRA may issue a notice of major error, the abbreviated procedure is reasonable. When the legislature has "specified the procedures an administrative agency must follow, ... courts should refrain from imposing their own notions of proper procedure on the agency." *Ship Creek Hydraulic Syndicate v. State, Dept. of Transp. and Pub. Facilities*, 685 P.2d 715, 717–18 (Alaska 1984) (eminent domain procedures).

We therefore conclude that the Borough received all process due.

AFFIRMED.

**19.** The Borough has not argued that it may assert the rights of its residents as *parens patriae,* nor do we decide this issue.

**20.** *See supra* note 12.