**CITY OF VALDEZ, a Municipal Corporation, Appellant,**

v.

**STATE of Alaska, DEPT. OF COMMUNITY & REGIONAL AFFAIRS; and David Hoffman, Commissioner, Appellees.**

No. S–3135.

Supreme Court of Alaska.

June 1, 1990.

Donna P. Walker, William M. Walker, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Avrum M. Gross, Susan A. Burke, Gross & Burke, P.C., Juneau, for appellant.

Marjorie L. Odland, Asst. Atty. Gen., Juneau, Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

This appeal presents the question whether the City of Valdez may impose a higher property tax mill rate on oil and gas property than on other property in the city to pay the cost of providing oil spill prevention and response services. The State Department of Community and Regional Affairs (DCRA) and the superior court both concluded that such a tax violates AS 43.-56.010(b). We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 1986, the City of Valdez enacted a property tax ordinance which created three service areas: (1) residential property, (2) commercial property, and (3) oil and gas property.[1] The ordinance permits taxation of service area three property at a rate higher than service areas one and two; the difference, however, can be no more than "the amount necessary to service the bonded indebtedness existing as of May 30, 1986 relating to the Valdez container terminal dock...." According to the ordinance, the additional tax on oil and gas property is aimed at defrayal of costs incurred by the city in providing preferential berthing for disabled oil tankers at the city's dock.[2]

---

1. Specifically, service area three consists of the last 18 miles of the trans-Alaska pipeline system, the Alyeska terminal facility, and the city-owned Valdez container terminal. (At. Br. 3) Service area three thus includes only oil and gas property, with Alyeska the sole taxpayer.

2. The city also proposed plans for other services, such as oil spill preparedness teams and equipment. However, these plans have not yet been implemented.

On June 2, 1986, the city passed a resolution which subjected property in service areas one and two to a tax levy of 13.5727 mills. A rate of 17.445 mills was levied against property in service area three.

DCRA informed the city that the imposition of a higher tax rate on oil and gas property violates AS 43.56.010(b). The superior court affirmed, and this appeal followed.

## II. STATUTORY FRAMEWORK

With the exception of statutorily exempted property,[3] Valdez has the authority to levy a property tax on all real and personal property within the city. *See* AS 29.45.010 and AS 29.45.550. In exercising this authority, it "may by ordinance establish ... differential tax zones to provide and levy property taxes for services not provided generally in the city or a different level of service than that provided generally in the city." AS 29.45.580.

The state, on the other hand, levies a property tax only on property used for oil and gas exploration, production, and pipeline transportation. AS 43.56.010(a).[4] Within prescribed methods, a municipality may also levy a tax on oil and gas property. AS 29.45.080. However, the municipality may tax oil and gas property only "at the rate of taxation that applies to other property taxed by the municipality. The tax shall be levied at a rate no higher than the rate applicable to other property taxable by the municipality." AS 43.56.010(b). The taxpayer who pays a municipal property tax under AS 29.45.080 receives a credit against its state tax. AS 43.56.010(d).[5]

## III. LEGALITY OF THE CITY TAX ON OIL AND GAS PROPERTY

DCRA argues that the city violated AS 43.56.010(b) by establishing a service area

which included only oil and gas property, and then imposing a tax on that service area which is higher than the tax imposed on any other taxable property in the city. The city argues that AS 29.45.580 permits such disparate taxation, so long as the oil and gas property receives a higher level of city services.[6]

At first glance, the statutes relied on by each party would seem to support their contrary positions. On the one hand, AS 43.56.010(b) requires that Valdez tax oil and gas property "at a rate no higher than the rate applicable to other property taxable by the [city]." On the other hand, AS 29.45.580 allows Valdez to "establish ... differential tax zones to provide and levy property taxes for services not provided generally in the city."

When it is impossible to give effect to two statutes, we apply a rule of statutory construction that the more specific statute governs even though the general provision standing alone encompasses the same subject. *Sprague v. State*, 590 P.2d 410, 415 n. 14 (Alaska 1979); *State, Dep't of Highways v. Green*, 586 P.2d 595, 602 (Alaska 1978). Here, AS 43.56.010(b) deals with the subject of municipal property tax rates on oil and gas property in specific terms. It specifically prohibits a municipal tax rate higher than that which applies to "other property taxable by the municipality." Contrarily, AS 29.45.580 does not make specific reference to tax rates on oil and gas property. It makes no distinctions based on the uses to which property within a service area is put, and thus does not specifically address the subject of municipal property tax rates on oil and gas property. Therefore, unless the two statutes can be reconciled, AS 43.56.010(b) governs.

The city argues that the statutes can be harmonized by interpreting AS 43.56.010(b) as a prohibition against taxation of oil and

---

3. *See* AS 29.45.030 and AS 29.45.050.

4. Under AS 43.56.010(a), the state taxes oil and gas property at a rate of 20 mills.

5. Under AS 43.56.010(d), this credit only applies up to the 20 mills levied by the state pursuant to AS 43.56.010(a).

6. The parties' arguments present questions of statutory interpretation which do not implicate DCRA's special expertise or determination of fundamental policies. We therefore apply our independent judgment to the issues raised by this appeal. *See Kenai Peninsula Borough v. State, Dep't of Community & Regional Affairs*, 751 P.2d 14, 16 n. 8 (Alaska 1988).

gas property at a rate higher than other property "similarly situated." According to the city, if we interpret AS 43.56.010(b) as implying this "similarly situated" language,

> [s]pecial service areas may be set up for oil and gas property and taxes may be imposed in that area to pay for extra services *so long as* the special tax does not exceed the tax imposed on any other municipal property receiving similar services. If there is no such other property receiving similar services, the imposition of the tax on oil and gas property is nonetheless consistent with AS 43.56.010 because the oil and gas property is not being taxed at a rate higher than other property similarly situated.

The city contends that if we do not imply this "similarly situated" language, the statute would be irrational, and therefore unconstitutional. That is, according to the city, it would be irrational to include in the same service area with oil and gas property other property not directly benefited by oil pollution control services.

While it would seem that a municipality should be able to fund oil pollution control services with a special tax levied only against oil and gas property, such a tax runs afoul of the plain dictate of AS 43.56.-010(b). The statute states that a municipal property tax on oil and gas property "shall be levied at a rate no higher than the rate applicable to *other property* taxable by the municipality." (Emphasis added.) When read in the context of a statute which specifically recognizes the power of a municipality to tax *oil and gas property*,[7] the most plausible meaning of the phrase "other property" is property other than oil and gas property. Thus, the statute plainly precludes that which the city argues it should allow, namely, differential tax treatment of oil and gas property.

In addition to violating the letter of AS 43.56.010(b), a special municipal tax levied against a service area comprised only of oil and gas property undermines the purpose of the statute. In *Kenai Peninsula Borough v. State, Dep't of Community & Regional Affairs*, 751 P.2d 14 (Alaska 1988), we observed that the statute

> was apparently intended to prevent a borough from shifting its fiscal responsibilities away from its general property owners and onto the shoulders of the oil and gas industry, and ultimately, due to the credit against state taxes, onto the state government. In other words, local residents should pay their fair share of the cost of local government rather than casting the burden disproportionately onto the people of the state.

*Id.* at 16. As well intentioned as a municipality may be in its attempt to provide services tailored to the needs of oil and gas property, the potential for a spillover of benefits to those who do not own oil and gas property, and thus a disproportionate tax burden on the oil and gas taxpayer, is great.

The Valdez tax illustrates this potentiality. The principal service which Valdez has provided to oil and gas property is priority berthing for disabled tankers at the city's public dock.[8] For this service, oil and gas property is taxed an additional amount up to that which is necessary to service bonded indebtedness on the dock.[9] In 1986, the actual amount of this additional tax was approximately 5.8 million dollars. From March 1986 through October 1987, however, disabled tankers used the dock only six times for a total of approximately ten days. The dock was otherwise available to all residents of Valdez, free of tariff. Thus, it seems that the costs of a public dock for the residents of Valdez are being borne by the oil and gas industry, and

---

7. AS 43.56.010(b) recognizes that "[a] municipality may levy and collect a tax under AS 29.45.080." As 29.45.080 permits municipal property taxation of "AS 43.56" property. AS 43.56 deals only with "Oil and Gas Exploration, Production and Pipeline Transportation Property."

8. The city concedes that various oil spill contingency services have yet to be implemented.

9. The dock was originally financed with general obligation bonds approved of by a majority of Valdez voters.

 

ultimately, because of the credit against state taxes, the people of the state.

For the reasons expressed above we hold that the tax is invalid.

AFFIRMED.