*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA STATE COMMISSION FOR HUMAN RIGHTS, | ) ) ) | Supreme Court Nos. S-17634/17650 |
| Appellant and Cross-Appellee, | ) ) ) | Alaska Workers' Compensation Appeals Commission No. 18-024 |
| v. | ) ) | O P I N I O N |
| UNITED PHYSICAL THERAPY, | ) ) | No. 7516 – April 16, 2021 |
| Appellee and Cross-Appellant. | ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Adam R. Franklin, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellant and Cross-Appellee. James C. Croft, The Croft Law Office, Anchorage, for Appellee and Cross-Appellant.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating]

BOLGER, Chief Justice.

## I.      INTRODUCTION

After an employer filed a retroactive controversion of medical treatment, the employee's healthcare provider filed a workers' compensation claim seeking payment for services it provided before the controversion was filed. The employer disputed its liability for payment, and after several prehearing conferences, the Alaska

Workers' Compensation Board set a hearing on the merits of the provider's claim. The Board ordered the employer to pay the provider approximately $510.00 for the services. The employer appealed, disputing several procedural aspects of the decision, and the Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. We affirm the Commission's decision.

## II. FACTS AND PROCEEDINGS

An Alaska State Commission for Human Rights[1] (State) employee with preexisting medical conditions was involved in a work-related motor vehicle accident in January 2017. The employee consulted with Dr. Teresa Bormann two days after the accident, complaining of "neck, back and hip pain after [a motor vehicle accident]." X-rays taken at the time showed no fractures and mild degenerative changes "without evidence of an acute injury." Dr. Bormann referred the employee to chiropractic treatment.

After several months of treatment the employee returned to Dr. Bormann, who diagnosed "a prolonged whiplash type injury of the lateral neck muscles." In December 2017 Dr. Bormann referred the employee to physical therapy at United Physical Therapy (UPT) for chronic neck pain and headache. After an evaluation UPT recommended eight weeks of twice weekly physical therapy. Dr. Bormann endorsed the treatment plan, and the employee's symptoms improved enough that she reduced her

---

[1] The parties' briefs and the Commission's decision identify the State, Department of Health & Social Services as the State agency involved in this litigation. The January 2017 report of injury, the employer's answer, and other documents in the record identify the agency for which the employee worked as the Alaska State Commission for Human Rights. There is no indication that the employee worked for the Department of Health & Social Services; that agency is not named in the record until the Department of Law entered an appearance about three weeks after it answered the health care provider's written claim.

physical therapy visits to once a week beginning in mid-January. She saw UPT three times in February 2018. Payment for these February visits became the main dispute before the Board.

The State arranged an employer's medical evaluation (EME) on February 28, 2018, with Dr. M. Sean Green, a neurologist, and Dr. R. David Bauer, an orthopedist. The State provided few medical records to the doctors: the EME report's chart review section summarized one chart note from 2005 and one from 2010, followed by Dr. Bormann's notes. Dr. Green expressed concern with the dearth of records related to the employee's preexisting conditions. The doctors thought they had adequate information to comment on causation, but included a disclaimer indicating that the medical records the State provided were "insufficient to fully understand [the employee's] current complaints and medical conditions."

The EME doctors diagnosed the employee with a cervical strain caused by the accident as well as several conditions they considered preexisting or unrelated to the work injury. The doctors stated that cervical strain is "an inherently self-limited and benign condition," which typically resolves "in a matter of days to weeks." They said that "[t]here is, in biological terms, no such thing as a chronic muscle strain." They identified the employee's preexisting conditions as the cause of her continuing pain. They did not think the accident had aggravated any of her preexisting conditions, did not think any treatment after Dr. Bormann's initial examination was related to the accident, and concluded no further treatment was needed. The EME doctors thought the work-related condition was medically stable and, in response to questions about whether the employee had a permanent impairment under the criteria in the American Medical

Association Guides to the Evaluation of Permanent Impairment[2] (the Guides), they stated that the employee did not have a permanent partial impairment.

Based on the EME report the State filed a notice of controversion on March 13, retroactively controverting all care after January 2017; the State had received UPT's invoices for the employee's February treatments the day before.[3] UPT filed a workers' compensation claim and request for a prehearing conference shortly after the State's controversion notice. It took the position that the State owed a penalty as well as interest on the disputed balance because the State had "never submitted payment or denial" for the specific claims, making UPT's total claim $1,033.27.

The State answered the claim, and wrote to UPT expressing "confus[ion] regarding the scope of [its] Workers' Compensation Claim"; it asked for clarification about whether UPT was "contesting the controversion itself, i.e. the medical basis for the controversion . . . or only the non-payment of those treatment dates." The State then requested a prehearing conference "in order to determine [UPT's] position on the controversion."

According to a summary of the July prehearing conference, UPT "was not seeking to challenge the controversion itself, but argued that the medical bills should be paid even with the controversion in place." The prehearing conference summary does not show an explicit agreement to limit the issues for hearing. UPT filed an affidavit of

---

[2] AM. MED. ASS'N, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (6th ed. 2008) [hereinafter GUIDES]. AS 23.30.190(b) requires use of the Guides when assessing permanent partial impairment.

[3] The State initially refused to pay for two December 2017 visits as well as the February visits, claiming that UPT had not billed them in a timely manner. At the hearing the parties informed the Board that the State had agreed to pay for the December visits, and the Board subsequently denied UPT's claim for penalties and interest on the December bill.

readiness for hearing on "the issues set forth in the Workers' Compensation Claim," and the parties met for a second prehearing conference. The August prehearing summary identified the issue for hearing as the "Merits of [UPT's] 3/23/2018 Workers' Compensation Claim." Neither party sought to amend or clarify this summary before the hearing.

In its hearing brief the State identified the issue as UPT's "claim that Employer owes it payment for medical treatment services provided to Employee." The State acknowledged that a medical provider may bring a claim for services it has provided, but contended that it did not owe UPT for its services because the State controverted care within 30 days of receiving UPT's February bill.[4]

UPT responded that the State should pay for the February services because the State controverted the care only after it had been provided and without prior notice to UPT. UPT took the position that a controversion should not apply retroactively and argued that the State should have acted earlier if it believed treatment beyond the initial evaluation was unreasonable or unnecessary. UPT asserted that the State failed to adequately explain its nonpayment of the bills within 30 days, as required by regulation.[5] And it disputed the EME report's conclusion, arguing it was "virtually impossible to state with certainty that 'the condition resolved itself within days of the collision' after the patient had already been treated."

---

**4**      *See* AS 23.30.097(d) (giving employer 30 days to pay employee's medical bills); *see also* 8 Alaska Administrative Code (AAC) 45.082(d)(1) (2020) (requiring the employer to "notify the employee and medical provider in writing the reasons for not paying all or a part of the bill or the reason for delay in payment no later than 30 days after receipt of the bill" when the employer controverts a bill).

**5**      *See* 8 AAC 45.082(d)(1).

At the hearing the Board chair identified the hearing issue as UPT's "claim for medical costs . . . plus a penalty and interest." No one objected or offered a different opinion about what was at issue. Only UPT's non-attorney representative testified about the contested payments; the employee attended but said little.

Near the end of the hearing, confusion about its scope became evident. After the State's attorney remarked that a discussion of the EME report was "not relevant to the issues here," the Board chair stated that in order to decide the issue the Board panel would "have to look at the EME, see if it's credible." The State objected, "Are you serious?" The State disputed whether the issue before the Board was the same as it would be if the employee, rather than the provider, had filed the medical claim but did not clarify how those claims would differ.

The Board chair explained that the Alaska Workers' Compensation Act (the Act) required all parties to file medical records in their possession with the Board within five days after a claim is filed.[6] He told the State that the only medical records in the Board file other than the EME report were UPT's treatment records and one medical record from Dr. Bormann. The chair noted that the EME report "clearly refer[red] to a number of other medical notes" which the State had not filed with the Board. After deliberation the Board decided to leave the record open for the parties to file any medical records in their possession.

The State asked the Board to reconsider its decision about the medical records, arguing that the Board's intent to evaluate the evidence did "not comport with the issues identified for hearing" in the July prehearing summary. The State argued that a Board regulation "limit[ed] the issues for hearing to those that are in dispute at the end of the prehearing" and that "the summary governs the issues and the course of the

---

[6]     AS 23.30.095(h).

hearing."[7]   In an interlocutory order the Board denied reconsideration of its order to provide the medical records, but stated it would determine the precise hearing issues after deliberation.

In its final written decision the Board set out two issues relevant to this appeal:  (1) whether the issue for hearing was "medical costs" or the question "whether [the State] is required to pay medical bills filed within thirty days preceding a controversion"; and (2) whether UPT was entitled to payment, penalty, or interest for the February visits.

The Board found that in discovery responses UPT had "explained it was seeking fees for [specific] dates of service plus penalty and interest."  It also found that at the August prehearing "[t]he issues for hearing were identified as the 'Merits of Provider's 3.23.2018 Workers' Compensation Claim.' "  And the Board found that "[n]either party requested the August . . . prehearing conference summary be amended or reconsidered."

On the question of the hearing issue, the Board noted the State's reliance on the sentence in the July prehearing conference summary indicating that UPT "was not seeking to challenge the controversion itself, but argued that the medical bills should be paid even with the controversion in place."  The Board thought the summary was ambiguous as to whether UPT was "conceding facts underlying the controversion were correct, or merely acknowledging the controversion was not unfair or frivolous."  The Board pointed out that in July, UPT had "lacked the evidence to analyze the [EME] doctors' conclusions" because the State had not "filed the medical reports upon which the EME doctors relied."

---

[7]     *See* 8 AAC 45.065(c) (providing that prehearing conference summary "will limit the issues for hearing to those that are in dispute at the end of the prehearing" and that summary "governs the issues" unless modified).

The Board then decided that statements in the July prehearing summary were irrelevant in any event because the August prehearing conference summary explicitly identified the issue for hearing as the merits of UPT's claim "for medical costs, penalty, and interest." Because the Board's regulations provide that "the issues stated in the prehearing conference summary control unless unusual and extenuating circumstances exist,"[8] and the State "did not identify any such circumstances," the issue for hearing was medical costs.

The Board concluded that the State had to pay for the February service dates. It gave little weight to the EME report when evaluating the evidence, relying in part on the Guides' recognition that " '[n]on-specific chronic recurrent neck pain (also known as chronic strain/sprain, . . . chronic whiplash, etc.)' can be the basis of a permanent impairment."[9] The Guides thus contradicted the EME doctors' "opinion that there was no such thing as a chronic muscle strain." The Board noted that Dr. Bormann and the employee's chiropractor "diagnosed cervical strain well past two weeks after the injury" and that the employee had "significantly improved" with physical therapy. The Board found the medical care UPT provided to be "reasonable and necessary" and ordered the State to pay for the February visits. It did not impose a penalty but did award UPT interest for the late payments.

The State appealed to the Commission and asked it to stay the Board's order for medical benefits. It filed an affidavit stating it would suffer irreparable harm if it had to pay UPT because (1) "there is no mechanism under [the Act] to recoup the payments" if the State won the appeal and (2) "making the payments only to later recoup

---

**8**      *See* 8 AAC 45.070(g).

**9**      GUIDES, *supra* note 2, at 564.

the payments creates irreparable and unnecessary transaction costs."[10] The Commission interpreted the State's affidavit as asserting "that no additional benefits are due to [the employee] or to UPT." It granted the stay, deciding that even though the amount at issue appeared to be less than $1,000.00, the State would suffer irreparable harm absent a stay. The Commission did not consider whether the appeal raised a serious and substantial question on the merits.[11]

The Commission also notified UPT that it requires corporations to be represented by attorneys if they intend to appear before it; it instructed UPT to get an attorney if it "intend[ed] to participate" in the appeal. UPT eventually retained an attorney after being advised that it "could file a motion for attorney fees" if it prevailed on appeal and that "[i]t would be up to the Commission to decide the motion."

In May 2019 the employee asked the Commission to dismiss her from the appeal as she had "no claim to any possible settlement" that might result. Email correspondence from November 2018 between the State and the employee was attached; in it the State told the employee that the State's "lien/interest" related to the accident was "settled," leaving the employee "free to negotiate/settle or otherwise handle [her] claim

---

[10]     *See* 8 AAC 57.100(g) (governing stays from the Commission and requiring an affidavit of irreparable harm without a stay).

[11]     *See Olsen Logging Co. v. Lawson*, 832 P.2d 174, 176 (Alaska 1992) (requiring that appellant raise serious and substantial questions on the merits and inability to recoup payments to stay lump sum workers' compensation awards); *see also Fluor Alaska, Inc. v. Rodriguez*, AWCAC Dec. No. 199 at 11 (July 31, 2014), http://labor.state.ak.us/WCcomm/memos-finals/D_199.pdf (construing AS 23.30.125(c) as encompassing both parts of *Olsen Logging* test for stays of past benefits).

as [she saw] fit."[12] The Commission dismissed the employee from the appeal after the State filed a notice of non-opposition.[13]

After briefing from both parties the Commission affirmed the Board's decision. As relevant to this appeal, the Commission determined that 8 AAC 45.065(c) governed the question whether the merits of UPT's claim were at issue and decided that the Board had "properly identified the issues as whether the treatment provided by UPT was compensable and, thus, payable to UPT, and whether UPT would be entitled to interest and penalty" for the visits.

The Commission rejected the State's argument that the Board improperly considered the Guides when evaluating the medical evidence. It cited precedent establishing that the Board may rely on its own "experience, judgment, [and] observations" as well as "inferences drawn from [them]"[14] when making a decision and concluded the Board had done so in this case because AS 23.30.190(b) requires use of the Guides. And the Commission noted the Board's statutory authority to weigh the evidence and determine credibility[15] as well as decisions holding that the Act requires the

---

[12] Under AS 23.30.015(a), when a "third person other than the employer or a fellow employee is liable for damages," the employer is entitled to reimbursement for compensation it has paid from any damages the third party pays.

[13] Because the employee was not a party to the Commission appeal at the time of the Commission's final decision, she is not a party to this appeal. Alaska R. App. P. 204(g).

[14] *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 533-34 (Alaska 1987).

[15] *See* AS 23.30.122 ("The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions.").

Commission "to follow the Board's credibility findings."[16] The Commission likewise rejected the State's argument that the Board misinterpreted AS 23.30.095(h), which requires all parties to file relevant medical records in their possession within five days after an interested party files a claim.

The Commission also considered whether the employee should have been formally joined as a party. The State asserted that not joining the employee "severely affect[ed] both [parties'] rights going forward" and suggested that because the employee was not formally joined, she was merely a witness for UPT. The Commission said the State had a direct liability to UPT, which could bring a claim on its own behalf, and observed that the employee testified at the hearing but the State chose not to cross-examine her. The Commission thus concluded that formal joinder was "neither needed nor warranted" and that the State was not prejudiced by the Board's failure to join the employee. Finally the Commission decided the Board's decision was supported by substantial evidence.

The State now appeals the Commission's decision. UPT cross-appeals the Commission's stay order.

## III. STANDARD OF REVIEW

In an appeal from the Commission, we review the Commission's decision and not the Board's.[17] We review an agency's interpretation of its own regulation under the reasonable basis standard.[18] An agency's application of its regulation to the facts of

---

[16]     *Sosa de Rosario v. Chenega Lodging*, 297 P.3d 139, 146 (Alaska 2013).

[17]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[18]     *Eder v. M-K Rivers*, 382 P.3d 1137, 1140 (Alaska 2016).

a case is reviewed for an abuse of discretion.[19] We will find an abuse of discretion when the decision on review is "arbitrary, capricious, or manifestly unreasonable."[20] "When we review the Commission's legal conclusions about the Board's exercise of discretion or legal rulings, we . . . independently assess the Board's rulings and in so doing apply the appropriate standard of review."[21]

## IV. DISCUSSION

### A. The Commission Correctly Concluded That The Board's Interpretation And Application Of Its Regulations To The Facts Of This Case Were Reasonable And Not Arbitrary.

The State argues that the Board misinterpreted its own regulations or the prehearing summaries in deciding that the issue before it included an assessment of the medical evidence. The State contends that at the July prehearing UPT agreed to limit the hearing issue to a narrow legal question about the State's receipt of UPT's invoices. In the State's view the statement UPT made at the July prehearing conference had changed the "merits" of UPT's claim by removing from the Board's consideration the compensability of the medical care UPT provided. At oral argument before us, the State set out the option of a remand so that UPT could either file a new claim or "rescind[] its stipulation" that it was not challenging the controversion.

UPT responds that the Board acted reasonably because the August prehearing conference summary is the only prehearing conference summary that

---

[19] *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998) ("The scope of review for an agency's application of its own regulations to the facts is limited to whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion.").

[20] *Tufco, Inc. v. Pac. Envtl. Corp.*, 113 P.3d 668, 671 (Alaska 2005).

[21] *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

explicitly identifies the issues for hearing, and the issue for hearing was "Merits of Provider's 3/23/2018 Workers' Compensation Claim." UPT contends that asking for "a ruling on the merits of a claim means asking for payment of benefits despite a controversion being in place" and that seeking a ruling on the merits was consistent with not challenging the controversion.

The Board's hearing regulation provides that unless the Board "determines that unusual and extenuating circumstances exist, the prehearing summary . . . governs the issues and the course of the hearing."[22] The State did not ask the Board to consider whether unusual and extenuating circumstances existed,[23] so the prehearing summary controlled the hearing issues. We agree with UPT: The Board reasonably used the August prehearing summary to identify the merits of UPT's claim as the subject of the hearing, because it was the only prehearing summary to identify an issue for hearing.

The parties' fundamental dispute, however, is what "Merits of [UPT's] 3/23/2018 Workers' Compensation Claim" encompasses. The State contends that UPT stipulated it was not challenging the controversion at the July prehearing, thereby

_____

[22]    8 AAC 45.070(g).

[23]    The State argues here that the Board "erred by failing to make an exception for the unusual circumstances of this case, as contemplated in 8 AAC 45.070(g)." But the State never asked the Board to determine whether such circumstances existed. The regulation does not require the Board sua sponte to consider whether there are unusual circumstances.

In its reply brief, the State analogizes the Board's failure to sua sponte consider unusual and extenuating circumstances to the Board's action in *Weaver v. ASRC Fed. Holding Co.*, 464 P.3d 1242 (Alaska 2020). Nothing in *Weaver* resembles this issue. The attorney in *Weaver* objected at the outset of the hearing, before the Board heard testimony, to the use of medical reports authored by doctors whom the employer had not produced for cross-examination as required under the Board's regulation. *Id.* at 1256. The Board did not rule on the objection but required the parties to submit briefs on the evidentiary issue after the hearing was over. *Id.*

removing the controversion from consideration at the hearing. At oral argument before us the State questioned the Board's power "to raise issues not raised by the parties," asserting that the Board improperly raised the issue of the controversion's validity. UPT emphasizes that it sought payment for its services, making the Board's interpretation of the prehearing summaries reasonable.

We begin our analysis with a brief overview of relevant workers' compensation principles. Workers' compensation benefits are payable without an award unless an employer files a notice of controversion.[24] The controversion notifies the employee and other interested parties why the employer contests its liability, thereby allowing a possible claimant to determine whether to file a written claim.[25] The Board may order payment of controverted benefits, but it must first determine a claimant's entitlement to them.[26] As the Commission recognized here, when medical care is contested the Board must decide whether the treatment is reasonable and necessary and is related to the work injury.[27]

The legislature intended that the Act be construed "to ensure the quick, efficient, fair, and predictable delivery of . . . medical benefits to injured workers at a reasonable cost to . . . employers" and that "workers' compensation cases shall be

---

[24]     *Harris v. M-K Rivers*, 325 P.3d 510, 518 (Alaska 2014) (construing AS 23.30.155).

[25]     *See Vue v. Walmart Assocs., Inc.*, 475 P.3d 270, 286 (Alaska 2020) ("Controversions thus give notice of disputed issues, which an employee can use to evaluate whether to pursue a claim." (citation omitted)).

[26]     *See* AS 23.30.110(e) (authorizing Board to reject claim or award benefits).

[27]     AS 23.30.010(a), .095(a); *see also Bockness v. Brown Jug, Inc.*, 980 P.2d 462, 466 (Alaska 1999) (construing Act as requiring employers to pay only for reasonable and necessary medical care).

decided on their merits except where otherwise provided by statute."²⁸ Moreover, the Act authorizes the Board to adopt procedures for claims and mandates that "[p]rocess and procedure" in workers' compensation be "as summary and simple as possible."²⁹

The Board's regulation about prehearings allows the Board or its designee to "exercise discretion in making determinations on" a list of issues, including "identifying and simplifying the issues," "amending the papers filed," and "accepting stipulations . . . that may avoid presenting unnecessary evidence at the hearing."³⁰ By its terms the regulation does not give the parties free rein to remove issues from the Board's consideration: the parties' actions are subject to the Board's or its designee's discretion. The July prehearing summary does not indicate that UPT amended its claim, nor does it show the Board designee's acceptance of an express stipulation to limit the hearing issue to a narrow legal question that would not resolve the medical care's compensability.

We have recognized that the Board "has a duty similar to that of courts to assist unrepresented litigants."³¹ The State necessarily contends that at the July prehearing UPT unambiguously abandoned consideration of the compensability of the care it provided. But nothing in the July prehearing summary suggests that the Board's designee either explained to UPT that its statement about the controversy might

---

²⁸ AS 23.30.001(1), (2).

²⁹ AS 23.30.005(h).

³⁰ 8 AAC 45.065(a).

³¹ *Bohlmann v. Alaska Constr. & Eng'g, Inc.*, 205 P.3d 316, 320 (Alaska 2009).

remove the services' compensability from the Board's consideration[32] or exercised his discretion to remove compensability as a hearing issue. Indeed nothing in the July prehearing summary identified an issue for hearing. UPT's subsequent affidavit of readiness for hearing told the Board it was "fully prepared for a hearing on the issues set forth in the Workers' Compensation Claim(s) . . . Dated 3/23/18." That claim was for "Medical Costs" as well as interest and penalty. And the August prehearing summary then identified the hearing's subject as the merits of UPT's claim.

Black's Law Dictionary defines "merits" as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points."[33] The Board reasonably interpreted the only prehearing conference summary identifying the hearing issue as requiring it to consider the substantive elements of UPT's claim for compensable medical care. The Commission correctly summarized those substantive elements as "determin[ing] if the treatment was reasonable and necessary for the work injury." Because the State's controversion, based on the EME report, contended that the care was not related to the work injury, the Board was required to evaluate the EME report in order to determine whether the care was compensable and the State was liable for the controverted services.

The process the State advocates — involving piecemeal litigation and multiple hearings for this limited claim — is not "as summary and simple as possible" as the Act requires.[34] And the State's interpretation of the prehearing process ignores the

---

[32]  *Cf. id.* at 320-21 (holding that Board failed to provide adequate assistance to self-represented claimant by not advising him about calculating deadline after employer misstated deadline).

[33]  *Merits*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[34]  AS 23.30.005(h).

Board's role in investigating claims,[35] assisting self-represented litigants, and providing prompt resolution of workers' compensation disputes. Like any adjudicator, the Board has an interest in deciding disputed claims promptly and thoroughly, without the need for numerous hearings.[36] Its actions here were consistent with that interest and with the Act's directive that claims be decided on their merits. We agree with the Commission that the Board acted reasonably and not arbitrarily in interpreting and applying its regulations.[37]

**B.      The Board Did Not Err In Taking Administrative Notice Of The Guides' Statement About Chronic Muscle Strain.**

In its decision the Board took administrative notice that the Guides "recognizes a diagnosis of 'Non-specific chronic recurrent neck pain (also known as chronic strain/sprain . . . chronic whiplash, etc.)' can be the basis of a permanent impairment." The Board gave less weight to the EME report because the doctors' "opinion that there was no such thing as a chronic muscle strain conflicts with the fact the American Medical [Association] recognizes the diagnosis." The State argues that the Board violated its due process rights by so doing.

---

[35]      *See, e.g.*, AS 23.30.135(a) ("The board may make its investigation . . . in the manner by which it may best ascertain the rights of the parties.").

[36]      *See, e.g.*, *Pool v. City of Wrangell*, AWCB Dec. No. 99-0117 at 5 (May 25, 1999) ("We disfavor multiple hearings, based on judicial economy.").

[37]      Because the Board correctly identified the hearing issue, we do not address the State's argument that the Board erred in requiring it to file medical records in its possession. Medical records, particularly those discussed in the EME report, are clearly related to the compensability of the care UPT provided to the employee. *See* AS 23.30.095(h) (requiring all parties to file with the Board medical records "relating to the proceedings" in their possession or control).

Although the State is not a "person" that can assert due process rights against another State agency,[38] the State as an employer is entitled to the procedural protections afforded other employers under the Act and the Board's regulations.[39] The Alaska Administrative Procedure Act (APA), which applies to Board adjudication unless the Act specifies otherwise,[40] includes a provision for "official notice" that is akin to judicial notice and parallels the Board's actions here.[41]

Alaska Statute 44.62.480 allows an administrative agency to take official notice "either before or after submission of the case for decision, of a generally accepted technical or scientific matter within the agency's special field, and of a fact that is judicially noticed by the courts of the state." Alaska Evidence Rule 201(b)(2) provides that a judicially noticed fact must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The APA requires the agency to inform the parties "of the matters to be noticed" and further provides, "A party present at the hearing shall, *upon request*, be given a reasonable opportunity to

---

[38]     *South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966) (holding that a state is not a "person" for purposes of Fifth Amendment's Due Process Clause); *Kenai Peninsula Borough v. State, Dep't of Cmty. & Reg'l Affairs*, 751 P.2d 14, 18-19 (Alaska 1988) (holding that a borough is not a "person" that can assert due process rights under Alaska Constitution).

[39]     *See* AS 23.30.001(4) (showing legislative intent that parties to Board proceedings be "afforded due process"); *cf. Kenai Peninsula Borough*, 751 P.2d at 19 ("[T]he only procedural rights to which the Borough is entitled are those bestowed by statute.").

[40]     AS 44.62.330(a)(12).

[41]     AS 44.62.480.

refute the officially noticed matters by evidence or by written or oral presentation of authority. The agency shall determine the manner of this refutation."[42]

The State contends it was deprived of "an opportunity to confront the information" the Board noticed, but AS 44.62.480 puts the onus on the parties to seek "a reasonable opportunity to refute the officially noticed matters." The State sought neither reconsideration nor modification of the final decision. The Board did not take administrative notice that chronic whiplash was a valid medical diagnosis; it merely took notice that this diagnosis is included in a reference the Board is required to use. It is not unreasonable for the Board to consult a reference the legislature adopted for certain medical determinations under the Act.[43]

The Guides includes "[n]on-specific chronic, or chronic recurrent neck pain (also known as chronic sprain/strain, . . . chronic whiplash, etc.)" in a table related to cervical spine impairments.[44] We have previously indicated that the Board can rely on its experience when deciding a case,[45] recently clarifying that "administrative adjudicators' expertise gained from repeated exposure to information in adjudications can support conclusions made from the evidence presented in a specific case."[46] Because AS 23.30.190 has since 1988 required the Board to use the Guides when making

---

[42]     *Id*. (emphasis added).

[43]     *Cf. Adamson v. Municipality of Anchorage*, 333 P.3d 5, 21 (Alaska 2014) (rejecting litigant's attempt to attack legislative finding about occupational disease).

[44]     GUIDES, *supra* note 2, at 564.

[45]     *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 533-34 (Alaska 1987).

[46]     *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784, 801 (Alaska 2019).

impairment determinations,[47] we have little doubt the Board panel was familiar with the Guides. And because the APA specifically permits an agency to notice a fact "after submission of the case for decision,"[48] the Board gave the State the same statutory procedural protections afforded to all litigants.

We agree with the Commission that the Board appropriately cited and relied on a statement from the Guides when evaluating the EME report.[49] We find no violation of any procedural regulation or any abuse of discretion in the Board's procedural rulings.

**C.     Any Error In Failing To Join The Employee Formally Was Harmless.**

The State asserts that the Board committed reversible error in failing to join the employee to UPT's claim because the State views the employee as a necessary party to the claim. UPT argues that the State waived this argument by failing to raise it before the Board and, in the alternative, that any error was harmless because the Board gave the employee notice, she participated in the proceedings, and the State had the opportunity to cross examine her. The State replies that it raised the issue at the first opportunity after its importance became apparent.

The Commission concluded that joinder was not necessary, but it did not address the Board's regulation providing that "a person other than the employee filing

---

[47]     Ch. 79, § 34, SLA 1988.

[48]     AS 44.62.480.

[49]     While it is unclear whether the State appealed the Commission's conclusion that substantial evidence supported the Board's decision, our review of the record persuades us that the Commission did not err in so finding. We independently review a Commission decision that substantial evidence supports the Board's findings of fact by independently reviewing the record and the Board's findings. *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

a claim shall join the injured employee as a party."[50] Under this regulation UPT presumably was required to join the employee, which it failed to do. However the State does not offer any persuasive argument explaining why lack of joinder was reversible error, and we note that the State acquiesced in the employee's dismissal from the Commission appeal.

We conclude that any error in failing to join the employee was harmless because the Board gave the employee notice of the claim when it was filed, the parties served her with many documents, and she participated in prehearing conferences and the hearing itself. Because we can see no prejudice to the State from UPT's failure to formally join the employee, we decline to reverse the Commission's decision on this basis.

### D.    UPT Waived Appellate Review Of The Stay Order.

UPT cross-appealed the Commission's stay order, arguing that the Commission's failure to consider whether the appeal raised a serious and substantial question on the merits of the appeal was error. The State contends UPT waived appellate review of this issue because UPT did not oppose the stay request and did not brief this issue before the Commission.

We agree with the State that UPT waived consideration of this point by not raising it before the Commission.[51] By not opposing the stay or seeking reconsideration

---

[50]    8 AAC 45.040(a).

[51]    *See Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) ("Arguments raised for the first time on appeal are generally waived.").

of the order, UPT did not allow the Commission to consider the points UPT now makes on appeal.[52]  Additionally, as UPT concedes, the issue is moot.

## V.  CONCLUSION

We AFFIRM the Commission's decision.

---

[52]    Although we do not decide whether the Commission must evaluate the merits of an appeal when an employer seeks to stay payment of lump-sum benefits, we are troubled by an apparent inconsistency in the Commission's interpretation of the stay standard for lump-sum awards.  The current regulation, adopted in 2012, *see* Alaska Administrative Code, Register 201 (Apr. 2012), omits an evaluation of the merits for stays of lump-sum awards; its language resembles AS 23.30.125(c), the statutory subsection about stays.  But a 2014 Commission decision interpreted the phrase "irreparable damage" in AS 23.30.125(c) as including consideration of the merits of the appeal.  *See Fluor Alaska, Inc. v. Rodriguez*, AWCAC Dec. No. 199, at 6-11 (July 31, 2014), http://labor.state.ak.us/WCcomm/memos-finals/D_199.pdf.  In *Fluor Alaska* the Commission "construe[d] the phrase 'irreparable damage' in the statute as encompassing the[] two components [of the standard in *Olsen Logging Co. v. Lawson*] for purposes of stays of lump sum payments."  *Id.* at 11 (discussing *Olsen Logging Co. v. Lawson*, 832 P.2d 174, 176 (Alaska 1992)).  Here, the Commission did not evaluate whether the State's appeal raised a serious and substantial question going to the merits, one component of the *Olsen Logging* test.  *See Olsen Logging Co.*, 832 P.2d at 176.